In re The BALDWIN LEAGUE OF INDEPENDENT SCHOOLS, d/b/a The Baldwin School, The McBurney School, and The Rhodes Academy, f/d/b/a The Baldwin School of New York City and The Carnegie Hill School, Debtor.

The CITY OF NEW YORK, Appellant,

v.

The BALDWIN LEAGUE OF INDEPENDENT SCHOOLS, Appellee.

Nos. 88 B 10401(CB), 88 Civ. 6258(SWK).

United States District Court, S.D. New York.

Jan. 30, 1990.

Peter L. Zimroth, Corporation Counsel of the City of New York, New York City, by Cornelius Roche, Asst. Corp. Counsel, for appellant.

Salomon, Green & Ostrow, New York City, by David M. Green, for appellee.

### MEMORANDUM AND ORDER

KRAM, District Judge.

This action comes to the Court on appeal from the Bankruptcy Court of this District, Judge Blackshear presiding. The City of

New York (hereinafter "City") seeks relief from the Bankruptcy Court's ruling that Debtor Baldwin League of Independent Schools (hereinafter "Debtor" or "Baldwin") is exempt from a mortgage recording tax pursuant to § 1146(c) of the United States Bankruptcy Code.

## BACKGROUND

The facts of this case are fully set forth in Judge Blackshear's oral ruling of June 21, 1988 and will only be summarized here. As part of Baldwin's voluntary petition for reorganization, it agreed with West End Realty Associates to take out a $7 million convertible mortgage secured by Debtor's school, located at 20 West End Avenue in New York. The proceeds from the mortgage represent the sole source of funding for Debtor's reorganization plan. The plan was subsequently confirmed by the Bankruptcy Court pursuant to the Bankruptcy Code, 11 U.S.C. § 1129.

New York Tax Law §§ 253 and 253–a provide that the State and City of New York receive a one percent and one-and-one-quarter percent tax, respectively, as a precondition for recording a mortgage with the City Register. Baldwin moved in Bankruptcy Court for a declaration that this mortgage recording tax does not apply to the convertible mortgage in this case, under an exemption found in Section 1146(c) of the Bankruptcy Code. The State voluntarily agreed to waive the § 253 tax,[1] while the City pursued the § 253–a tax in the Bankruptcy Court. The total liability alleged by the City amounts to $21,858.

The Bankruptcy Judge held a hearing on this question and issued an oral ruling exempting Debtor from this tax. The City now appeals the adverse determination. This Court reviews the Bankruptcy Court's holdings *de novo* and affirms them in full.

---

1. The State indicated at a hearing before the Bankruptcy Court that "if the Court finds that there is no statutory basis for the exemption of the [taxes of the] State, it's more than willing to receive the taxes." Transcript of Hearing of June 7, 1988, at 61. The State did not appeal the Bankruptcy Court's ruling to this Court.

## DISCUSSION

The Bankruptcy Code provides an exemption from certain taxes on the bankrupt estate, as follows:

> The issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under Section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax.

11 U.S.C. § 1146(c). Thus, a tax must meet three preconditions in order for it to be exempt under the section: (1) it must be a stamp or similar tax, (2) imposed upon the making or delivery of an instrument transferring an interest in property, (3) in connection with a confirmed bankruptcy plan. *In re Amsterdam Avenue Development Associates*, 103 B.R. 454, 456 (Bkry.S.D.N.Y.1989). Appellant argues that the § 253–a tax does not satisfy any of these conditions. Appellant's Brief at 19 (hereinafter "Apnt. Br."). This Court agrees with the Bankruptcy Court's analysis and affirms that Baldwin is exempt from paying this tax.

As to the first precondition, the mortgage recording tax is in fact a "stamp tax or similar tax," because the amount is determined by the consideration cited in the document, because payment is a prerequisite to recordation, and because the tax is imposed on a written instrument. *Amsterdam Avenue, supra*, 103 B.R. at 455–56; *see also, Federal Land Bank v. Crosland*, 261 U.S. 374, 378, 43 S.Ct. 385, 386–87, 67 L.Ed. 703 (1923) (state may not tax mortgage recordation where federal statute prohibits a tax on the mortgage itself). Appellant's argument that this Court should adopt the narrow definition of "stamp tax" found in Black's Law Dictionary is unavailing. *See City of New York v. Jacoby–Bender*, 758 F.2d 840, 841–42 (2d Cir.1985) (Congress intended to enlarge this exemption when it replaced the Bankruptcy Act

---

Nonetheless, the City purports to make the State a party to this appeal. This Court does not believe that the issue of the State tax exemption is before it. However, even if it were, the analyses of §§ 253 and 253–a would be identical.

with the Code and added the "similar tax" language). This portion of the Bankruptcy Court's holding, Oral Ruling ("O.R.") at 9–12, is affirmed.

■ Second, the City cannot successfully characterize the transaction here, a mortgage with an option to buy, as other than an "instrument of transfer." [2] The Bankruptcy Code provides a broad definition of transfer, thus:

Transfer means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption....

11 U.S.C. § 101(50). *See also Jacoby–Bender, supra,* 758 F.2d at 842 (reflecting "Congress' understanding that 'transfer' is a word of broad meaning" under the Code); *First Federal Savs. & Loan v. Hulm,* 738 F.2d 323, 327 (8th Cir.1984) (broad definition of "transfer" encompasses the grant of a mortgage). The City's argument that this definition includes only "document[s], such as a deed, which transfers the title to property absolutely," clearly contradicts the intended reach of the statute. The convertible mortgage here represents a transfer of Debtor's principal asset, to the satisfaction of the third "precondition" of § 1146(c). The Court affirms this aspect of the Bankruptcy Court's ruling, O.R. at 12–14.

■ Finally, contrary to the City's argument, the mortgage is part of Baldwin's reorganization plan. This requirement was interpreted in *Jacoby–Bender:*

[I]f the transfer was reasonably necessary to consummate the Debtor's plan for reorganization, it is within the meaning of § 1146(c).

758 F.2d at 841. Appellant cannot seriously contend that Baldwin's $7 million mortgage of its sole asset to West End is not "reasonably necessary" to the reorganization plan. Indeed it provides the "sole source of funding" for the plan. O.R. at 14. The City argues sophistically that al-

though the mortgage loan agreement may be part of the confirmed plan, the recording of it is not. This attempted distinction between the act of recording the mortgage and the mortgage itself fails. As the Supreme Court has pointed out, although a mortgagee is not required to put its deed on the record, once a state provides a registry, recording becomes a "practical necessity" in order to prevent overriding by a person without notice. *Crosland, supra,* 261 U.S. at 377, 43 S.Ct. at 386. The Court below elaborated, "due to the practical necessity of recording as a means of providing notice, the choice of whether or not to record is really no choice at all." O.R. at 14 (citing *Crosland, supra,* 261 U.S. at 378, 43 S.Ct. at 386–87). Debtor's recording of this mortgage is a "reasonably necessary" step in consummating the plan, and the third precondition is therefore satisfied as well.

This Court rejects the City's characterization of the Bankruptcy Court's ruling as "replete with misstatements of fact and misconceptions of law." Appellant's arguments turn mostly on a false distinction between the act of recording a mortgage and the mortgage itself. This same argument was considered and rejected in *Jacoby–Bender,* and the Bankruptcy Court in this case was correct not to adopt it.

The City also argues to this Court that, as a policy matter, taxation statutes are traditionally construed in favor of the taxing power in the public interest. Apnt. Br. at 25–26 (citing *Moorhead v. United States,* 774 F.2d 936, 941 (9th Cir.1985); other cites omitted). However, Congress intended for the Code to "aid the implementation of plans and the reorganization process by providing transfers of property free of certain taxes." *In re Jacoby–Bender,* 40 B.R. 10, 16 (Bkcy.E.D.N.Y.1984) (cited in O.R. at 15). This Court will not substitute competing policy considerations for those articulated by Congress.

## CONCLUSION

For the reasons set forth above, the holdings of the Bankruptcy Court are affirmed.

---

**2.** The City tries to persuade the Court of this point by referring to the mortgage here as a

"loan agreement." This difference is merely semantical and does not alter the analysis.

Debtor is exempt under Section 1146(c) of the Bankruptcy Code from paying the mortgage recording tax sought by the City.

SO ORDERED.