### In re BEL–AIRE INVESTMENTS, INC., Debtor.

#### Bankruptcy No. 88–3593–8P1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

July 1, 1992.

Harley E. Riedel, Edward M. Waller, Jr., Tampa, Fla., Richard S. Webb, IV, Sp. Counsel, Sarasota, Fla., for debtor.

Kent L. Weissinger, Tallahassee, Fla., for Florida Dept. of Revenue.

Robert E. Messick, Sarasota, Fla., for Betty Winter, et al.

William Knight Zewadski, Tampa, Fla., for Barnett Bank, Manatee Co.

Troy H. Myers, Jr., Sarasota, Fla., for Wingray, Inc.

Sara Kistler, Asst. U.S. Trustee.

## ORDER ON MOTION FOR RELIEF FROM ORDER ON MOTION TO MODIFY PLAN

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a confirmed Chapter 11 case. The matter under consideration is a Motion filed by the State of Florida, Department of Revenue (State) seeking relief from this Court's Order which granted a Motion To Modify the Confirmed Plan of Reorganization filed by Bel–Aire Investments, Inc. (Debtor).

The facts relevant to the matter under consideration are without dispute and are part of the record of this Chapter 11 case and may be summarized as follows:

At the time the Debtor filed its Chapter 11 Petition, its principal shareholders were Donald and Betty Winter. The Winters were subsequently divorced. To carry out the terms of their property settlement agreement executed in connection with the divorce proceeding and approved by the Circuit Court, the Debtor's Plan of Reorganization provided *inter alia* for the transfer by the Debtor of six or ten of its R.V. Parks (Parks) to Wingray, Inc. (Wingray), an entity specifically created to acquire ownership of the six Parks. The Plan further provided that Betty Winter was to manage the Parks owned by Wingray, and Donald Winter was to manage the Parks retained by the Debtor.

According to the Confirmed Plan, following the transfer of the six Parks to Wingray, the Debtor was to be relieved of all debts encumbering the six Parks transferred to Wingray, and in turn Wingray was also to be relieved of any liability associated with the Parks retained by the Debtor under the Plan. This arrangement was necessary because many of the Parks which were owned by the Debtor were cross-collateralized. The Plan also provided that all the mortgages encumbering the assets to be transferred to Wingray would be assumed by Wingray.

On July 10, 1990, this Court entered its Order and confirmed the Debtor's Plan, and authorized the Debtor to transfer ownership of the six Parks to Wingray. The Order of Confirmation further provided that the transfers of assets from the Debtor to Wingray were deemed to be transfers pursuant to a Plan of Reorganization and thus exempt from transfer taxes and other taxes which are ordinarily imposed by the State by virtue of 11 U.S.C. § 1146(c). This Section provides an exemption from "a stamp tax or similar tax" for "[t]he issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under § 1129 of this title."

In order to effectuate the Confirmed Plan, the Debtor subsequently refinanced the properties it retained through Southtrust Bank of Sarasota County. In connection with this transaction, the Debtor initially paid to the State the sum of $12,800.00 for Intangible Personal Property Tax, and the sum of $8,000.00 for the Documentary Stamp Tax, or a total of $20,800.00. The Debtor later requested a refund of this total amount on the basis of its exemption under § 1146(c) of the Bankruptcy Code. Although the Debtor's Petition for the Refund was initially denied, it now appears that the State no longer contests the Debtor's entitlement to a refund and is willing to refund the entire $20,800.00 to the Debtor.

Wingray also refinanced the properties it obtained pursuant to the Confirmed Plan. In doing so, Wingray executed a promissory note and granted a mortgage to Barnett Bank of Manatee County (Barnett). It is without dispute that Wingray paid the State $14,160.00 in Intangible Personal Property Tax and $22,656.00 in Documentary Stamp Tax upon the recording of the mortgage. Sometime thereafter Wingray filed suit in the Circuit Court seeking a refund, pursuant to *Fla.Stat.* § 72.011. This suit is still pending.

Because the original confirmed Plan did not specifically authorize the refinancing of the properties involved, including the six Parks transferred to Wingray, the Debtor filed its Motion to Modify Plan in order to obtain authorization for the refinancing of all mortgages not only by the Debtor but also by Wingray. In addition, the Debtor in its Motion also sought a determination that the refinancing by both was not subject to Florida's Documentary Stamp Tax or Intangible Personal Property Tax pursuant to § 1146(c) of the Bankruptcy Code. On April 30, 1991, this Court entered an Order granting the Motion which provided in pertinent part as follows:

> The Debtor's Amended Plan ... is hereby clarified to provide that the terms of the Plan may be implemented by means of the refinancing of the loans encumbering some or all of the properties subject to the Plan, and that both [the Debtor] and Wingray Inc. are specifically authorized to accomplish such refinancing [and] ... are specifically permitted to issue notes and mortgages as part of the Plan ... Any such refinancing shall constitute transactions or transfers "under the Debtor's Plan" within the meaning of § 1146(c) of the Bankruptcy Code, and shall be exempt from Florida documentary stamp tax and intangible tax.

Based on the fact that the Debtor's Motion to Modify the Confirmed Plan was granted by this Court without proper notice to the State, this Court granted the Motion in which the State sought relief from the Order which authorized the modification of the Confirmed Plan for the purpose of revisiting the Debtor's Motion to Modify Plan.

This leaves for consideration the merits of the original Motion filed by the Debtor seeking to modify its Confirmed Plan. As

noted earlier, the Debtor sought the modification in order to assure that both transactions, i.e., the restructuring of the debt of the Debtor, and more importantly, the refinancing of the mortgages encumbering the six Parks transferred to Wingray pursuant to the confirmed plan, would not be subject to taxation based on § 1146(c) of the Bankruptcy Code.

It is the State's contention first that this Court's Order determining that § 1146(c) exempts Wingray's refinancing transactions with Barnett from taxation has the effect of authorizing the entry of a money judgment against the State, since the tax has already been paid by Wingray. Therefore, according to the State, this Court lacks subject matter jurisdiction to enter a money judgment against the State because of the State's Eleventh Amendment immunity from suits, relying on the Supreme Court's decision in *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). In the alternative, the State contends that § 1146(c) does not exempt an otherwise taxable transfer when the Debtor is not a party to the transaction and, in any event, the intangible personal property tax paid by Wingray was not a transfer tax for purposes of § 1146(c).

In opposition, the Debtor and Wingray contend (1) that through the Motion to Modify Plan, the Debtor did not seek a money judgment, but instead only sought a determination that the refinancing is not subject to the State's claims pursuant to § 1146(c); (2) that § 1146(c) applies to the documentary stamps that were paid on the refinancing of the six Parks transferred to Wingray by the Debtor; and (3) that Florida's Intangible Tax on mortgages is a transfer tax for purposes of § 1146(c).

Addressing first the State's sovereign immunity argument, it is now well established that this Court may not grant a money judgment against a State without the State's expressed or implied waiver of the sovereign immunity provided by the Eleventh Amendment. *Hoffman v. Connecticut Dept. of Income Maintenance, supra.* It is equally true, however, that this Court has jurisdiction to determine the reach and the scope of the immunity from taxation granted by § 1146(c) of the Bankruptcy Code. This Court is satisfied that the State's defense of sovereign immunity is without merit as this Court has jurisdiction to consider the Debtor's Motion to Modify the Confirmed Plan because it is not a suit seeking a money judgment against a sovereign, but instead is a proceeding to construe the scope and reach of § 1146(c) of the Bankruptcy Code.

However, this Court is satisfied that the second contention advanced by the State is more persuasive. In support of its contention the State points out that the transaction between Wingray and Barnett, i.e., the refinancing of the properties obtained by Wingray, was not the type of transaction which was intended to be immune from the imposition of tax by the State under § 1146(c) because this transaction was between a non-debtor and a lending institution, a transaction in which the Debtor was not involved. This contention is well supported by case law. In the case of *In re Amsterdam Avenue Development Associates*, 103 B.R. 454 (Bkrtcy.S.D.N.Y. 1989), the district court held that a tax on the recording of a mortgage granted by a non-debtor to a bank in consideration of a loan utilized to purchase property from a Chapter 11 debtor was not taxed on an "instrument of transfer under a plan" and, therefore, the non-debtor was not exempt from paying the tax. As the Court stated:

> ... we find 'nothing in the plain language of the statute, its legislative history, or the structure of the Bankruptcy Code to indicate that Congress intended to exclude taxes' paid by a second-party purchaser of estate property for recording a mortgage granted to a third party bank ... Section 1123, where Congress indicated its intentions as to the contents of Chapter 11 plans evidences that Congress did not intend that section 1146(c) exemptions for transfers under a Chapter 11 plan apply to non-debtor transactions.

*Id.* at 459, 460.

The State also relies on *In re Eastmet Corporation*, 907 F.2d 1487 (4th Cir.1990), where the court of appeals held that a

purchase money deed of trust executed by a purchaser of a Chapter 11 debtor's real property did not qualify for tax exemption under § 1146(c) because the plan did not require that the financing of the transaction be accomplished through a purchase money deed of trust. The court of appeals reversed the lower court ruling that the non-debtor's deed of trust was exempt, even though the bankruptcy court had determined that the deed of trust was "part of the same transaction" by which the non-debtor had acquired property from the Debtor.

To avoid the results of these cases, the Debtor and Wingray contend that the facts of this case must be distinguished. The Debtor and Wingray argue that Wingray was created to implement the Plan and its refinancing of the debt on the properties transferred to it was crucial to the Debtor's reorganization. In doing so, the Debtor and Wingray rely on the cases standing for various propositions relating to § 1146(c), none of which are directly on point because they all address transactions to which the debtors were parties. *See In the Matter of CCA Partnership*, 72 B.R. 765 (D.Del. 1987); *In re Jacoby–Bender, Inc.*, 758 F.2d 840 (2nd Cir.1985); *In re Smoss Enterprises Corp. v. City of N.Y.*, 54 B.R. 950 (E.D.N.Y.1985); *In re Permar Provisions, Inc.*, 79 B.R. 530 (Bkrtcy.E.D.N.Y.1987); *In re The Baldwin League of Independent Schools*, 110 B.R. 125 (S.D.N.Y.1990). Even a cursory analysis of these cases leaves no doubt that they furnish scant, if any, support for the proposition urged by the Debtor.

This Court is satisfied that the heart of the Debtor's Plan of Reorganization was nothing more than a division of properties, and allocation of the outstanding indebtedness encumbering these properties between the Debtor and Wingray. While there is no question that the refinancing by Wingray of the six Parks obtained did benefit the Debtor, it is equally clear that it also benefitted Wingray because the refinancing of each of the properties permitted the properties of the other to be released from the previously existing obligations. Thus, while at first blush one might conclude that Wingray's transaction with Barnett, i.e.,

refinancing the indebtedness encumbering the properties it received as part of the Plan, was authorized or warranted, it was not the only option available to Wingray. For instance Wingray was free to deal with the six Parks as it saw fit and could have elected to sell the Parks rather than retain them after securing new financing in order to satisfy the old mortgages encumbering the property involved.

In sum, the transaction between Wingray and Barnett was not a transaction in furtherance of consummation of the terms of the Confirmed Plan, but independent of any of the specific terms of the Confirmed Plan. It is clear from the real purpose of this Chapter 11 case and from the Plan ultimately confirmed that the transaction between Wingray and Barnett was only incidental to and a peripheral aspect of this Chapter 11 case and the Confirmed Plan.

Based on the foregoing, this Court is satisfied that the mortgage Wingray granted in favor of Barnett was not a transaction in which there were "instruments of transfer under a plan," thus within the scope of the provision of immunity from taxation provided for by 11 U.S.C. § 1146(c). In addition, this Court is satisfied that § 1146(c) should not be extended to a transaction entered into by a non-debtor corporation after it has received assets from a Debtor, when the Debtor is not a party to that transaction. Having reached this conclusion, it is unnecessary for this Court to address the remaining issues.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion For Relief From Order On Motion To Modify Plan is hereby granted, and This Court's Order on Motion to Modify Plan is vacated to the extent it provides that the refinancing by Wingray of its assets is exempt pursuant to 11 U.S.C. § 1146(c).

DONE AND ORDERED.