**In re KERNER PRINTING CO., INC., Debtor.**

**Bankruptcy No. 94 B 43756 (JLG).**

United States Bankruptcy Court, S.D. New York.

Oct. 31, 1995.

**122**

Sachs Kamhi & Kushner, P.C., Carle Place, New York, for Debtor.

Rogers & Wells, New York City, for Nat-West Bank, N.A.

Paul A. Crotty, Corporation Counsel of the City of New York, New York City, for the New York City Department of Finance.

## MEMORANDUM DECISION ON OBJECTION TO CONFIRMATION BY NEW YORK CITY DEPARTMENT OF FINANCE

JAMES L. GARRITY, Jr., Bankruptcy Judge.

The New York City Department of Finance ("City") objects to that provision in Kerner Printing Co.'s ("Kerner") Modified Liquidating Plan of Reorganization, as further modified (the "Plan"), purporting to exempt transfers of certain condominium units by New Kerner Co. ("New Kerner") from taxation pursuant to § 1146(c) of the Bankruptcy Code ("Code"). There is no dispute that the Plan otherwise complies with § 1129 of the Code. Resolution of the objection in the City's favor will not affect the Plan's consummation. For the reasons stated herein, the transfers by New Kerner contemplated by the Plan are not tax exempt under § 1146(c).[1]

*Facts*

The relevant facts are not disputed. Debtor leases the Eighth, Ninth and Tenth floors (the "Condo Units") of a twelve story condominium building located at 207 West 25th Street, New York, New York. The Condo Units are owned by New York City Industrial Development Agency ("IDA"). It purchased them on February 1, 1982 with the proceeds of a certain bond issue (the "Bond") in the principal amount of $505,000. The IDA leases the Condo Units to debtor under an agreement requiring debtor to pay rent equal to the principal and interest due under the Bond. The agreement provides debtor with an option to purchase the Condo Units for $1.00.

In 1985, debtor leased the Ninth floor of the Condo Units to the Nugent Organization. For several years prior to January 1992, debtor was engaged in the graphic arts business. It operated that business on the Eighth and Tenth floors of the Condo Units. In January 1992, debtor sold its machinery and equipment, other than its prepress equipment, to Burmeister Color Lithography, Inc. ("Burmeister"). As part of that transaction, debtor leased Burmeister the Eighth floor of the Condo Units. Between January 1992 and September 1993, debtor was engaged as a printing broker and performed prepress services for the printing industry. In September 1993, debtor sold its prepress operations to New Direction Color, Inc. ("New Direction"). As part of that transaction, debtor leased New Direction the Tenth floor of the Condo Units. Since September 1993, debtor has been engaged solely in the real estate business. At present, only the Ninth and Tenth floors of the Condo Units are leased. Burmeister is no longer a tenant and the Eighth floor is vacant except for a month to month lease for an office with a third party.

On August 8, 1995 ("Filing Date"), Kerner filed a voluntary petition for reorganization under chapter 11 of the Code in this District. It has remained in possession of its business

---

1. Our subject matter jurisdiction of this matter is predicated on 28 U.S.C. §§ 1334(b) and 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

and assets as a debtor in possession pursuant to §§ 1107 and 1108 of the Code. On or about September 11, 1995, debtor filed its Plan. National Westminster Bank (USA) ("NatWest") presently owns the Bond. To secure its obligations thereunder, IDA granted NatWest a first mortgage in the Condo Units and assigned NatWest its rights under the leases. As of the Filing Date, NatWest was owed approximately $140,000 on account of the Bond. In this capacity, NatWest is classified as the Class I claimant under the Plan. Simultaneously with the issuance of the Bond, the New York Job Development Authority ("JDA") loaned debtor the sum of $336,764. That loan is secured by the IDA's grant of a second mortgage on its fee interest in the Condo Units. As of the Filing Date, JDA was owed approximately $114,000 on account of that claim. It is classified as the Class II claimant under the Plan. On or about October 23, 1986, NatWest loaned debtor the sum of $1,300,000. That loan is secured by (a) a first lien and security interest on debtor's sublease and rents in the Condo Units; (b) a first lien and security interest in all of the debtor's personal property; and (c) a third mortgage on the IDA's fee interest in the Condo Units. In this capacity, NatWest is classified as the Class III claimant under the Plan. As of the Filing Date, NatWest was owed approximately $680,000 on account of that claim. On July 15, 1989, NatWest loaned debtor an additional $600,000. This loan is secured by (a) a second lien and mortgage on debtor's sublease and rents in the Condo Units; (b) a second lien and security interest on all debtor's personal property; and (c) a fourth mortgage on the IDA's fee interest in the Condo Units. As of the Filing Date, NatWest was owed $345,000 on account of that claim. On that account, it is classified as the Class IV claimant under the Plan. The Plan contemplates the liquidation of debtor's assets and distribution of the proceeds in full satisfaction of the claims of creditors.

On the Plan's Effective Date debtor is deemed to exercise the purchase option in the IDA lease and shall receive from IDA all documents necessary to acquire IDA's right, title and interest in and to the Condo Units subject to all existing liens claims and encumbrances. *See* Plan, Article V § A(a). Immediately thereafter, debtor will transfer its fee title in the Condo Units to New Kerner free and clear of all liens, claims and encumbrances except for those held by NatWest and JDA, which shall remain as valid mortgages and security interests upon the Condo Units. *See* Plan, Article I at 6, Article V § A(d). New Kerner is defined as "NatWest or its designee". *See* Plan, Article I at 6.

In its sole discretion, New Kerner is authorized to sell the Condo Units by auction or private sale, subject only to JDA's rights described below and the requirement that the units be sold on or before the sixth anniversary of the Effective Date. If after the expiration of two years from the Effective Date, New Kerner has not sold at least one Condo Unit, JDA may give notice (the "Two Year JDA Notice") demanding that New Kerner either (a) sell one of the units at public auction which must be held within 60 days of receipt of the notice, or (b) purchase the JDA Class II claim. *See* Plan, Article IV § B at 11. The claim must be purchased within 75 days of the JDA Notice Date at par payable in four quarterly installments, with interest at the pre-default rate fixed in JDA's Loan Documents. NatWest may also have to execute and deliver a note meeting certain specifications. *See* Plan, Article IV § B at 11–12. If New Kerner elects to sell the Condo Unit and the sale proceeds are insufficient to satisfy the JDA Class II claim, it may either (a) schedule a public auction to be held within 120 days of New Kerner's receipt of the proceeds from the sale of the first Condo Unit to sell as many of the remaining Condo Units as necessary to satisfy the balance of the JDA Class II claim, or (b) purchase the balance of the JDA Class II claim within 135 days from New Kerner Co.'s receipt of the proceeds of the first Condo Unit. *See* Plan, Article IV § B at 12. In all instances, NatWest and JDA are permitted to credit bid their respective claims. The Plan provides that all transfers of the Condo Units shall be exempt from any transfer taxes, mortgage recording taxes or other stamp taxes or similar taxes pursuant to § 1146(c)

of the Code. *See* Plan, Article V § A at 17, § C.

Debtor has $257,000 on deposit and available for distribution on the Effective Date. The City, and state and federal taxing authorities are Class VIII creditors under the Plan whose claims aggregate approximately $94,000. As modified, the Plan provides that Class VIII claimants will be paid in full on the Effective Date, except to the extent otherwise agreed. To facilitate those payments debtor's professionals have agreed to be paid their administrative fees, to the extent awarded under § 330 of the Code, other than on the Effective Date, as necessary to ensure that there are sufficient funds to pay the tax claims in full on the Effective Date. The proceeds from the sale of the Condo Units, net of costs of the sale, shall be distributed first to satisfy NatWest's and JDA's allowed claims in full. Plan, Article V § D at 18. The balance, if any, shall be distributed to the debtor to make distributions to its professionals, as necessary to satisfy their allowed administrative priority claims, and then to general unsecured creditors and equity holders as specified in the Plan. *Id.*

## Discussion

■■ Section 1146(c) of the Code states:

The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax.

11 U.S.C. § 1146(c). Congress enacted § 1146(c) to facilitate reorganization by giving debtors tax relief from stamp or similar tax, such as transfer taxes, for transfers of property pursuant to an instrument of transfer under a confirmed plan. *See In re Jacoby–Bender, Inc.,* 758 F.2d 840, 841–42 (2d Cir.1985). By exempting the transaction from tax, § 1146(c) reduces the obligations encumbering the property, thereby making a greater portion of the sale proceeds available to creditors and affords debtor a quick and efficient means of distributing and discharging its obligations under the plan. *See Matter of CCA Partnership,* 72 B.R. 765, 766 (D.Del.1987), *aff'd without op.,* 833 F.2d 303

(3d Cir.1987). For § 1146(c) to apply, the underlying tax (1) must be a stamp tax or similar tax, (2) imposed upon the making or delivery of an instrument transferring an interest in property, and (3) in connection with a confirmed bankruptcy Plan. *See* 11 U.S.C. § 1146(c); *see, e.g., In re Baldwin League of Independent Schools,* 110 B.R. 125, 126 (S.D.N.Y.1990); *In re Amsterdam Ave. Dev. Assocs.,* 103 B.R. 454, 456 (Bankr. S.D.N.Y.1989).

■ The City disputes that New Kerner can transfer the Condo Units free and clear of the City's Real Property Transfer Tax ("Transfer Tax"). It concedes that for purposes of § 1146(c) of the Code, the Transfer Tax is a stamp tax or similar tax, imposed upon the making or delivery of an instrument transferring an interest in property. It does not challenge application of § 1146(c) to the sale of the Condo Units from IDA to debtor or the transfer of the units by debtor to New Kerner. The City contends that the transfers by New Kerner contemplated by the Plan are not tax exempt because they are among non-debtors. Alternatively, it argues that § 1146(c) is not applicable because the Plan does not specify how, when or to whom the units will be sold, and thus, the proposed transfers are not "under" the Plan. In sustaining the City's objection, we need only consider the first argument.

■ Cases in which § 1146(c) has been found applicable uniformly involve transfers of estate assets by debtors-in-possession. *See, e.g., In re Jacoby–Bender, Inc.,* 758 F.2d 840 (2d Cir.1985); *In re Baldwin League of Indep. Schools,* 110 B.R. 125 (S.D.N.Y.1990); *Matter of CCA Partnership,* 72 B.R. 765 (D.Del.1987), *aff'd without op.,* 833 F.2d 303 (3d Cir.1987); *In re Smoss Enters. Corp.,* 54 B.R. 950 (E.D.N.Y.1985); *In re Permar Provisions, Inc.,* 79 B.R. 530 (Bankr.E.D.N.Y. 1987). NatWest argues that the transfers by New Kerner are tax exempt because New Kerner is acting as the estate's sales agent and will not profit from the disposition of the Condo Units. The Plan contemplates that New Kerner will hold title to the Condo Units, free and clear of all liens, claims and encumbrances, except those of NatWest and the JDA. New Kerner has complete control

over how, when, or to whom the Condo Units are sold, subject only JDA's lien and its rights to payment under the Plan, and the mandate that the units be sold no later than the six years from the Effective Date. New Kerner will retain and distribute sale proceeds to NatWest and JDA, and only the net proceeds, if any, will be distributed to the debtor for distribution in accordance with the Plan. "'Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act.' An essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control." *Pan American World Airways, Inc. v. Shulman Transport Enterprises, Inc. (In re Shulman Transport Enters., Inc.),* 744 F.2d 293, 295 (2d Cir.1984) (quoting *Restatement (Second) of Agency* § 1(1) (1958)) (citations omitted). Without the essential element of control between debtor and New Kerner, an agency relationship does not exist. *See Kyung Sup Ahn v. Rooney Pace, Inc.,* 624 F.Supp. 368, 370 (S.D.N.Y.1985). Because the sale(s) of the Condo Units by New Kerner are transactions among non-debtors, they are not exempt under § 1146(c) from the City's Real Property Transfer Tax. *See In re Bel–Aire Invs., Inc.,* 142 B.R. 992, 995 (Bankr. M.D.Fla.1992) (§ 1146(c) exemption does not apply to non-debtor transactions); *In re Amsterdam Ave. Dev. Assocs.,* 103 B.R. 454, 460 (Bankr.S.D.N.Y.1989) (same); *see generally California State Bd. of Equalization v. Sierra Summit, Inc.,* 490 U.S. 844, 851–52, 109 S.Ct. 2228, 2234, 104 L.Ed.2d 910 (1989). ("Although Congress can confer an immunity from state taxation ... '[a] court must proceed carefully when asked to recognize an exemption from state taxation that Congress has not clearly expressed'....) (Citations omitted).

## Conclusion

Based on the foregoing, we find that the sales of the Condo Units by New Kerner are not tax exempt under § 1146(c) of the Code.