**CLERK OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY, MARYLAND, et al., Appellants,**

v.

**NVR HOMES, INC., Appellee/Cross–Appellant.**

No. 97–1238–A.

United States District Court, E.D. Virginia, Alexandria Division.

July 17, 1998.

Mark L. Earley, Attorney General of Virginia, Paul S. Stahl, Assistant Attorney General, Fairfax, VA, J. Joseph Curran, Jr., Attorney General of Maryland, Julia M. Freit, Assistant Attorney General, Baltimore, MD, for Maryland Circuit Court Clerks.

Mark L. Earley, Attorney General of Virginia, Paul S. Stahl, Assistant Attorney General, Fairfax, D. Michael Fisher, Attorney General of Pennsylvania, Robert C. Edmundson, Senior Deputy Attorney General, Pittsburgh, PA, for Commonwealth of Pennsylvania.

Arnold M. Weiner, Snyder, Weiner, Weltchek, Vogelstein & Brown, Pikesville, MD, Allan P. Hillman, Nathan D. Adler, Neuberger, Quinn, Gielen, Rubin & Gibber, PA, Baltimore, MD, James M. Sack, Sack & Associates, McLean, for NVR, Homes, Inc.

## MEMORANDUM OPINION

ELLIS, District Judge.

At issue in this bankruptcy appeal are the following questions:

(1) whether the bankruptcy court properly declared certain post-petition, pre-confirmation real property transfers by debtor exempt from taxation pursuant to 11 U.S.C. § 1146(c); and

(2) whether debtor's initiation of a contested matter requesting a declaration that such transfers were exempt from taxation constituted a "suit" for Eleventh Amendment purposes.

### I.

During the 1980's, debtor NVR Homes Inc.[1] grew into a leading home builder and mortgage lending facility. Operating chiefly

---

1. Eleven related debtors filed Chapter 11 petitions in this matter. NVR Homes, Inc., is the successor in interest to two of them, namely NVHomes Limited Partnership and Ryan Operations General Partnership. For simplicity, the debtors are referred to collectively throughout as "NVR."

in the Virginia and Maryland suburbs of Washington D.C., NVR engaged in the practice of buying residential lots, building houses thereon, and then selling the improved lots at a profit. In 1987, in furtherance of its business operations, NVR purchased Ryan Homes, a home construction company. In connection with that acquisition, NVR incurred approximately $235,000,000 in bank debt to a consortium of eight banks ("the Bank Group"). It also issued approximately $220,000,000 in subordinated debt securities, consisting of notes and debentures.

As the real estate market declined in the late 1980's, NVR's decreasing operating profits prevented it from complying with its substantial debt obligations. In the face of mounting financial pressure, NVR was forced to develop and implement an operational restructuring, and to initiate negotiations with the Bank Group on a proposed restructuring of its working capital. Although NVR made progress in implementing this restructuring, the Bank Group declined to continue funding the enterprise after May 31, 1992. As a result, NVR filed a voluntary Chapter 11 bankruptcy petition on April 6, 1992.

The bankruptcy court granted NVR's first day motions, thereby authorizing NVR, as debtor in possession, to sell properties free and clear of liens, and to obtain secured, priority financing. In essence, the bankruptcy court's orders authorized NVR to continue to conduct its day-to-day business substantially as it had prior to commencement of its reorganization case, i.e., to acquire and dispose of lots in the ordinary course of business, and thereby avoid liquidation. Consistent with this authorization, NVR, from April 6, 1992, through September 30, 1993, engaged in 5,571 real property transfers in the States of Maryland, Pennsylvania, Virginia, New York, Delaware, and North Carolina. During that time, NVR paid in excess of $8.3 million in transfer and recordation taxes to

those states and to certain local jurisdictions within those states. Of this amount, approximately $6.3 million was paid to various Maryland jurisdictions,[2] and approximately $600,000 was paid to various Pennsylvania jurisdictions.[3] These Maryland and Pennsylvania jurisdictions are collectively referred to herein as the "Taxing Authorities."

Because the NVR plan of reorganization confirmed by the bankruptcy court on July 22, 1993 ("the Plan") is central to the disputes at bar, a brief description of its history and contents is in order. Initially, NVR had anticipated that its pre-petition debt could be restructured and retired over time. Its first plan of reorganization was based on this assumption. Yet, because the Bank Group members would not agree to any plan of reorganization that did not provide for expedited payment of their claims, NVR developed the Plan that was confirmed by the bankruptcy court, and which provided for a public debt offering sufficient to cover the debt to the Bank Group. Specifically, the Plan required the sale of Senior Notes "in such an amount as will provide the Debtors sufficient cash to pay the Allowed Class 2 Claims and Allowed Claims in other Classes that are to be paid in cash on the Effective Date." The Plan also provided for the cancellation of NVR's subordinated debt securities in exchange for the issuance of approximately 91.1% of the initially outstanding equity interests in NVR. Thus, under the Plan, NVR creditors holding notes and debentures would receive shares of NVR in return for the cancellation of their subordinated debt securities.

To facilitate its implementation, and pursuant to 11 U.S.C. § 1146(c), the Plan, in section 4.13, exempted NVR's issuance and exchange of these securities from state and local taxes. It also exempted from such taxes any transfer of NVR's property made

---

2. The Maryland jurisdictions include the circuit court clerks for Anne Arundel, Baltimore, Carroll, Harford, Howard, Montgomery, Prince George's, Frederick and Washington Counties. The clerks of all nine counties collect a state transfer tax, and all but the clerk of Prince George's County collect a state recordation tax. Only the clerks of Anne Arundel and Howard Counties collect a county transfer tax.

3. The Pennsylvania jurisdictions include the Commonwealth itself, four townships (Hopewell, Hampton, Shaler, and Moon), one borough (Franklin Park), and five school districts (Hampton Township, Shaler Area, Moon Area, North Allegeny, and Seneca Valley).

"under, in furtherance of, or in connection with the Plan." [4] And, in confirming the Plan, the bankruptcy court incorporated this language in its order, and retained jurisdiction over the "interpretation or enforcement of the Plan."

The Taxing Authorities were served with copies of the proposed Plan and related papers because they were creditors of the estate for taxes unrelated to the transfer and recordation taxes at issue here. None of the Taxing Authorities objected to the Plan, and, after the July 22, 1993 order confirming the Plan, none appealed, as they might have,[5] to the district court.

So far as the record reflects, the Plan was implemented without significant incident; the specified securities issued free from state and local taxation, the Bank Group members received payment of NVR's pre-petition debt, the subordinated debt security holders received their equity interests in NVR, and NVR's debts were canceled. All of this was accomplished prior to September 30, 1993, at which time NVR emerged from its Chapter 11 bankruptcy. Importantly, throughout the period of bankruptcy—beginning April 6, 1992 with the filing of the petition, continuing through July 22, 1993 when the Plan was confirmed, and concluding September 30, 1993 when the Plan was fully implemented and the bankruptcy period ended—NVR continued to operate its business as a debtor in possession, buying property, constructing homes, and then selling the homes. NVR paid transfer and recordation taxes relating to these transactions to various state and local taxing jurisdictions.

Thereafter, during 1994–95, NVR, citing § 1146(c) and the Plan, sought refunds from the various jurisdictions. Some of the jurisdictions, namely Virginia, New York, Delaware, and North Carolina, and the local jurisdictions therein, refunded to NVR all of the taxes collected.[6] However, the state and local taxing authorities in Maryland and Pennsylvania were less obliging.

In response, NVR initiated a contested matter pursuant to Rule 9014, Fed. R. Bankr.P.,[7] requesting a declaration that its real property transfers during the period from April 6, 1992 through September 30, 1993 were exempt from taxation under the provisions of the Plan and under 11 U.S.C. § 1146(c). Notice of the motion was served on the Taxing Authorities, all of whom responded by filing motions for abstention, or alternatively, for dismissal or summary judgment.[8] By order entered on April 4, 1996, the bankruptcy court granted NVR's motion, finding NVR's real property transfers from April 6, 1992 through September 30, 1993 to be exempt from transfer and recordation taxes under 11 U.S.C. § 1146(c).[9]

Shortly thereafter, the Taxing Authorities moved the bankruptcy court to reconsider its ruling in light of *Seminole Tribe of Florida v.*

---

4. Section 4.13 of the Plan provided in full, as follows:
   Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of securities pursuant to the Plan, and the transfer of, or creation of any lien on, any property of any Debtor under, in furtherance of, or in connection with the Plan shall not be subject to any stamp tax, real estate transfer tax, recordation tax, or similar tax.

5. *See Maryland v. Antonelli Creditors' Liquidating Trust*, 123 F.3d 777, 782 (4th Cir.1997).

6. The refunds from these four states totaled approximately $1.2 million.

7. Fed. R. Bankr.P. 9014 provides in pertinent part, that:
   In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court orders an answer to a motion.

8. The Taxing Authorities' motion to dismiss was based, in part, on their claim of Eleventh Amendment immunity. Although 11 U.S.C. § 106, as amended by the Bankruptcy Reform Act of 1994, expressly purports to abrogate the states' sovereign immunity for issues arising under, *inter alia*, § 1146(c), the Taxing Authorities challenged the provision as unconstitutional.

9. Specifically, the bankruptcy court found that "the purchase of lots and the sale of lots and finished homes, were essential to the formulation, confirmation and consummation of the Confirmed Plan and to [NVR's] effective reorganization and emergence from bankruptcy, and thus fall within the tax exemption of 11 U.S.C. § 1146(c)."

*Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), in which the Supreme Court held that "[t]he Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." *Id.* at 72–73, 116 S.Ct. 1114. In light of *Seminole Tribe*, the bankruptcy court granted the motion in part, holding that Congress' attempt to abrogate the states' Eleventh Amendment immunity through 11 U.S.C. § 106 was unconstitutional. *See In re NVR L.P.*, 206 B.R. 831, 843–44 (Bankr.E.D.Va.1997).[10] And absent abrogation of the Taxing Authorities' sovereign immunity, the bankruptcy court further held that NVR's motion for a declaration of tax exemption was an impermissible "suit" against "arms of the State" for Eleventh Amendment purposes. *See id.* Accordingly, the bankruptcy court amended its April 4, 1996 order to make explicit that the order was not binding on the Commonwealth of Pennsylvania or the Maryland circuit court clerks in their role as collectors of the state transfer tax. *See id.* at 852–53.[11]

On appeal, the Taxing Authorities argue that NVR's post-petition, pre-confirmation transfers of real property are not entitled to an exemption from transfer and recordation taxes under 11 U.S.C. § 1146(c).[12] NVR disagrees, of course, and also cross-appeals, contending that none of the Taxing Authorities have a basis to invoke Eleventh Amendment immunity because NVR's motion for a declaration construing § 1146(c) was not a "suit" against one of the United States.

## II.

Findings of fact made by the bankruptcy court are reviewed for clear error. *See* Fed.

R. Bankr.P. 8013; *In re Stanley*, 66 F.3d 664, 667 (4th Cir.1995). And, in this regard, a finding of fact is deemed to be clearly erroneous when, although there is some evidence to support it, the reviewing court, on the basis of all the evidence, is "left with the definite and firm conviction that a mistake has been committed." *See In re Varat Enters., Inc.*, 81 F.3d 1310, 1314 (4th Cir.1996)(citing *In re Green*, 934 F.2d 568, 570 (4th Cir.1991)). Review of the bankruptcy court's application of the law is, of course, *de novo*. *See In re Stanley*, 66 F.3d at 667.

## III.

■ Analysis properly begins with the terms of section 1146(c), which provide that:

The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax.

11 U.S.C. § 1146(c). The parties do not dispute that the NVR property transfers at issue here could fit well within this provision; thus the transfers involve the "delivery of an instrument of transfer," and the transfer and recordation taxes at issue here are "stamp tax[es] or similar tax[es]" within the meaning of § 1146(c). But the parties do dispute whether, as the statute requires, the transfers were "under" the Plan. To resolve this dispute, reference must be made to section 4.13 of the Plan, which expressly exempts from state and local taxes "the transfer of ... any property of any Debtor under, in furtherance of, or in connection with the Plan." The property transfers fit as well under this provision as under § 1146(c). As the bankruptcy court put it, the transfers were

---

**10.** The Fourth Circuit reached the same conclusion in *In re Creative Goldsmiths of Washington, D.C., Inc.*, 119 F.3d 1140, 1147 (4th Cir.1997).

**11.** The bankruptcy court concluded, however, that the local Pennsylvania jurisdictions, and the Maryland circuit court clerks in their roles as collectors of the state recordation tax and the county transfer tax, were without a basis for invoking the Eleventh Amendment, and that the April 4, 1996 order therefor remained binding as to these entities. *See id.* at 846–48.

**12.** The Maryland jurisdictions raise two additional issues on appeal. They contend first that the Eleventh Amendment also bars application of the bankruptcy court's April 4, 1996 order to the Maryland circuit court clerks in their role as collectors of state recordation taxes. Second, they contend further that the order docs not apply to the county transfer taxes collected by the clerks of Anne Arundel and Howard Counties because neither county received due process notice or an opportunity to be heard on NVR's motion.

"essential to the formulation, confirmation and consummation of the Confirmed Plan," and clearly fall within the general terms of section 4.13. Hence, the transfers plainly fall "under [the] plan confirmed," within the terms of § 1146(c).

Against this conclusion, it may be argued that section 4.13 speaks in terms too general to accomplish NVR's purpose, that only specifically described matters in the Plan, like the public debt offering, qualify for the tax exemption. Of course, it is preferable in drafting a plan to identify the covered transactions with specificity so as to remove any doubt or ambiguity concerning the intended coverage of the plan and to provide reasonable notice of the plan's coverage to voting creditors and the bankruptcy court. Although the Plan in this instance is not as specific as it might have been,[13] it seems quite clear, given the nature of NVR's business, that the language of section 4.13 provided adequate notice to creditors and the bankruptcy court that real property transfers in the ordinary course of that business were covered by the Plan. Indeed, the bankruptcy court reached precisely this conclusion in its April 4, 1996 order, where it interpreted section 4.13 as covering "the transfers of real property by or to the Debtors, whether by purchase or sale, during the period from April 6, 1992 through September 30, 1993."

But this is not the end of the analysis, for many of the transactions occurred prior to the Plan's confirmation on July 22, 1993, and hence the question arises whether these earlier transactions, *i.e.*, those occurring between April 6, 1992 and June 22, 1993 can be said to be "under" the Plan. An affirmative answer to this question follows from the Plan itself, which includes no temporal limitations on covered transactions, and from the practicalities of the situation. As a practical matter, reorganization plans often concern or contemplate transactions that occur prior to

the plan's confirmation. Thus, in the typical Chapter 11 case, if not in most such cases, the development, submission, and confirmation of a plan of reorganization is a process that is not usually completed until some time after the filing of the petition, during which period of time the debtor continues to operate. And it is often true that the business conducted during this post-petition, pre-confirmation period is essential to the success of both the plan of reorganization and the debtor's emergence from bankruptcy. Precisely this occurred here. As the bankruptcy court concluded, the post-petition, pre-confirmation property transfers here in issue enabled NVR to remain a viable operation and avoid liquidation.[14]

Thus, nothing in the language of the Plan nor in the statutory exemption itself restricts the application of § 1146(c) to transactions occurring after the Plan's confirmation. *See In re Lopez Dev., Inc.*, 154 B.R. 607 (Bankr.S.D.Fla.1993)(applying § 1146(c) exemption to debtor's pre-confirmation transfers); *In re Baldwin League of Indep. Schools*, 110 B.R. 125 (S.D.N.Y.1990)(same); *In re Smoss Enters. Corp.*, 54 B.R. 950 (E.D.N.Y.1985)(same). And, because the real property transfers from April 6, 1992 through September 30, 1993 fall squarely "under" the Plan within the meaning of § 1146(c), the bankruptcy court properly held them exempt from taxation.

**IV.**

Despite finding the § 1146(c) exemption applicable to NVR's real property transfers, the bankruptcy court also held, after reconsideration, that it had no authority in its April 4, 1996 order to bind either the Commonwealth of Pennsylvania or the Maryland circuit court clerks as collectors of the state transfer tax, finding them immune from suit in federal court under the Eleventh

13. Thus, the Plan here might preferably have been drafted to exempt from taxation "the transfers of real property by or to the debtors, whether by purchase or sale, occurring in the ordinary course of the debtors' business during the period from April 6, 1992 through September 30, 1993."

14. Specifically, the transfers allowed NVR to reduce its pre-petition debt by more than $50 million prior to the Senior Notes offering. And, the revenues generated by these property transfers facilitated the $160 million public debt offering, which was a central precondition to the Plan's confirmation.

Amendment. *See In re NVR*, 206 B.R. at 848. This result depends, of course, on the bankruptcy court's conclusion that NVR's initiation of the contested matter under Fed. R. Bankr.P. 9014 constituted a "suit" against the Taxing Authorities within the meaning of the Eleventh Amendment. *See id.* at 843–44.[15] If, as NVR contends, its motion was not a suit filed "against one of the United States," then notwithstanding the result in *Seminole Tribe*, an Eleventh Amendment defense is not applicable here. If, on the other hand, NVR's motion was a suit for Eleventh Amendment purposes, then the bankruptcy court correctly restricted the binding effect of its April 4, 1996 order to less than all of the Taxing Authorities.

A review of this contested matter, *i.e.*, NVR's motion for a declaration that its real property transfers were exempt from taxation, reveals that the proceeding lacked the fundamental attributes that commonly identify a "suit." Specifically, none of the Taxing Authorities were named as defendants, nor were they served with process mandating that they appear in a federal court. *See Antonelli Creditors'*, 123 F.3d at 786; *see also Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 407–12, 5 L.Ed. 257 (1821)(a suit entails demanding something by the institution of process that compels the attendance of the parties subject to the demand). The Taxing Authorities were served with notice of NVR's motion in accordance with the rules governing the initiation of a contested matter. *See* Fed. R. Bankr.P. 9014. Nevertheless, while they were free to appear and to challenge NVR's motion, as they did, they were equally free to refrain from doing so.[16] Clearly then, the instant case is distinguishable from the one in which "a debtor, a trustee or other private person files an adversary action against the state in the bankruptcy court, causing the bankruptcy court to issue process summonsing the state to appear." *Antonelli Creditors'*, 123 F.3d at 786–87.

Essentially, NVR's motion requested that the bankruptcy court, pursuant to its retained jurisdiction over the Plan, enter an order clarifying the intended coverage of the Plan's exemption provision. In doing so, the bankruptcy court merely provided, with its April 4, 1996 order, the specificity that could, and indeed should, have been provided within section 4.13 of the Plan itself. Moreover, the bankruptcy court's authority to enter the April 4 order, like its authority to enter the confirmation order, derived not from its jurisdiction over the Commonwealth of Pennsylvania, or any of the Maryland circuit court clerks,[17] but rather from its continued jurisdiction over NVR and the Plan. *See Antonelli Creditors'*, 123 F.3d at 787.[18] Thus, the Taxing Authorities' immunity from "suit" was no obstacle to the bankruptcy court's power to declare, pursuant to Rule 3020(d), certain

---

**15.** As the Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any *suit in law or equity*, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." (emphasis added).

**16.** While Rule 9014 requires that the party against whom relief is sought receive "reasonable notice and opportunity for hearing," the rule itself requires no response. *See* Fed. R. Bankr.P. 9014.

**17.** The service of a Rule 9014 motion, unlike the service of a summons and complaint, does not confer personal jurisdiction over the party served, but simply informs that party of the nature of the motion and the relief requested. *See In re Antell*, 155 B.R. 921, 931 (Bankr.E.D.Pa. 1992); *but see In re Laughlin*, 210 B.R. 659, 661 (1st Cir. BAP 1997). Just as reasonable notice must be provided to creditors before a bankruptcy court may confirm a Chapter 11 plan, *see* 11 U.S.C. § 1128(a), Rule 9014's notice requirement must be satisfied before a bankruptcy court may grant the relief requested in a contested matter, which in this instance was only a clarification of a Plan.

**18.** Specifically, the bankruptcy court entered the April 4 order pursuant to Fed. R. Bankr.P. 3020(d), which provides that "[n]otwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate." And beyond this, the bankruptcy court's confirmation order itself included an express reservation of jurisdiction to construe terms of the Plan. Even absent such an express reservation of jurisdiction, bankruptcy courts retain, under 11 U.S.C. § 1142, post-confirmation authority over matters concerning the execution, implementation, and interpretation of a confirmed plan. *See Goodman v. Phillip R. Curtis Enters., Inc.*, 809 F.2d 228, 232 (4th Cir.1987); *In re Leeds Bldg. Prods., Inc.*, 160 B.R. 689, 691 (Bankr.N.D.Ga.1993).

real property transfers exempt from taxation under § 1146(c) and the Plan.[19]

Accordingly, because NVR's initiation of the contested matter in the instant case was not a suit "against one of the United States," an Eleventh Amendment defense is not available to any of the Taxing Authorities.

## V.

For the foregoing reasons, the decision of the bankruptcy court declaring NVR's real property transfers from April 6, 1992 through September 30, 1993, exempt from transfer and recordation taxes is affirmed. Its subsequent finding that NVR's motion for a declaration of tax exemption constituted a "suit" such that the Commonwealth of Pennsylvania and the Maryland circuit court clerks as collectors of state transfer taxes were entitled to Eleventh Amendment immunity is reversed.

Neither reached nor decided here is the question whether the bankruptcy court's April 4 order is binding in any way on the Taxing Authorities. That question is appropriately left to the court or state agency to which NVR must apply for a refund.[20]

An appropriate order shall issue.

---

**19.** In this regard, NVR's motion is distinguishable from a declaratory judgment action brought pursuant to 28 U.S.C. § 2201, where a court's discretion to grant the requested declaratory relief depends on its jurisdiction over a potentially unconsenting defendant. Thus, while a declaratory judgment action under § 2201 would be inappropriate against the Taxing Authorities because the relief requested would be tantamount to a money judgment against an unconsenting state, *see Green v. Mansour*, 474 U.S. 64, 73–74, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), this general prohibition is inapposite to NVR's motion here at issue.

**20.** It is worth noting that the Maryland circuit court clerks also contend on appeal that the bankruptcy court's April 4, 1996 order does not apply to the county transfer taxes collected by the clerks of Anne Arundel and Howard Counties because neither county received due process notice or an opportunity to be heard on NVR's motion. This contention is unpersuasive. For due process purposes, the binding effect of bank-

ruptcy court orders depends on whether the interested parties receive notice "reasonably calculated under all the circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." *Antonelli Creditors'*, 123 F.3d at 783 (quoting *Mullane v. Central Hanover Bank and Trust*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Such notice was provided here, as notice of the motion was served on the county circuit court clerks. In any event, as noted here, NVR requested, and received, from the bankruptcy court nothing more than an order clarifying that the Plan, by its terms and pursuant to § 1146(c), exempted its real property transfers from transfer and recordation taxes. As noted, whether this order is binding on Anne Arundel and Howard Counties in a separate proceeding by NVR for a refund of the county transfer taxes is best left to the court or administrative agency that will preside over such a proceeding.