**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

STATE OF MARYLAND; MONTGOMERY
COUNTY; BALTIMORE COUNTY,
<u>Plaintiffs-Appellants,</u>

v.

ANTONELLI CREDITORS' LIQUIDATING

No. 96-1111

TRUST; REALCO-RITCHIE CENTER
LLC; BK BELMONT LLC;
CAMBERWELL PROPERTIES LLC,
<u>Defendants-Appellees,</u>

UNITED STATES OF AMERICA,
<u>Intervenor-Appellee.</u>

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
J. Frederick Motz, Chief District Judge.
(CA-95-1713-JFM)

Argued: April 9, 1997

Decided: August 26, 1997

Before NIEMEYER, LUTTIG, and MICHAEL, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Luttig and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Julia Melville Freit, Assistant Attorney General, Balti-
more, Maryland, for Appellants. Daniel Martin Lewis, ARNOLD &

PORTER, Washington, D.C., for Appellees. Michael Eugene Robinson, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General of Maryland, Baltimore, Maryland; Charles W. Thompson, Jr., Montgomery County Attorney, David J. Frankel, Associate County Attorney, Rockville, Maryland; Virginia W. Barnhart, Baltimore County Attorney, Towson, Maryland, for Appellants. Andrew T. Karron, Richard M. Lucas, ARNOLD & PORTER, Washington, D.C.; John A. Roberts, VENABLE, BAETJER & HOWARD, L.L.P., Baltimore, Maryland; Douglas Bregman, BREGMAN, BERBERT & SCHWARTZ, Bethesda, Maryland; Michael Barrett, John Millian, GIBSON, DUNN & CRUTCHER, Washington, D.C., for Appellees. Frank W. Hunger, Assistant Attorney General, Lynne A. Battaglia, United States Attorney, Mark B. Stern, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor.

_____

**OPINION**

NIEMEYER, Circuit Judge:

The State of Maryland and two of its counties, Montgomery County and Baltimore County, (collectively, "Taxing Authorities") brought suit in state court to recover "in excess of $95,000" in state and county transfer and recordation taxes. The Taxing Authorities sued the Antonelli Creditors' Liquidating Trust ("Liquidating Trust") as transferor of three parcels of real property, as well as the three purchasers of those parcels. They also sued for transfer and recordation taxes in connection with other unspecified transfers by the Liquidating Trust. After removing the case to federal court pursuant to 28 U.S.C. § 1452, the defendants answered, contending, among other things, that the transfers were made pursuant to a bankruptcy plan confirmed by order of the bankruptcy court and that therefore, pursuant to the Bankruptcy Code, 11 U.S.C. § 1146(c) (exempting plan transfers from state "stamp tax or similar tax"), the transfers in question were exempt from state taxation.

On cross-motions for summary judgment, the district court held that the State of Maryland and Montgomery County are bound by the

2

bankruptcy court's confirmation order and may not challenge it collaterally in a subsequent court proceeding. Because the reasonableness of the notice of the bankruptcy plan to Baltimore County was "questionable," however, the court ruled against Baltimore County on the merits, applying 11 U.S.C. § 1146(c).

On appeal, the Taxing Authorities argue that they were not required to object to the plan's provisions regarding recording taxes because they had insufficient notice of the plan's provisions and because they were not creditors for such taxes at the time. They claim, therefore, that they are not bound by the bankruptcy court's order confirming the plan. They also contend that 11 U.S.C. § 1146(c) exempts from taxation only those transfers to which the debtor was a party, not transfers from a non-debtor party, such as the Liquidating Trust, to third-party purchasers. Finally, they assert that they are immune from applicability of the bankruptcy court's order by reason of the Eleventh Amendment.

For reasons somewhat different from those articulated by the district court, we affirm.

I

In 1991, after a soured real estate market adversely affected the financial liquidity of Judith and Dominic F. Antonelli, Jr., who were involved in over 150 real estate projects, creditors filed petitions for involuntary bankruptcy against the Antonellis under Chapter 7 of the Bankruptcy Code. The Antonellis had nearly 2,000 creditors with over $200 million in claims and over $100 million in assets, consisting mostly of interests in real property. On the Antonellis' motion, the bankruptcy court converted the Chapter 7 proceeding into a Chapter 11 proceeding to allow the Antonellis to develop a plan of reorganization.

The creditors' committee and the Antonellis negotiated for months to develop a plan of reorganization, working through four distinct versions of a plan. Ultimately, the bankruptcy court confirmed the "Fourth Amended Joint and Consolidated Plan of Reorganization," which had been approved by holders of 93% of the unsecured claims. The bankruptcy court confirmed the plan by order dated November

3

13, 1992; the district court affirmed, In re Antonelli, 148 B.R. 443 (D. Md. 1992); and we affirmed, 4 F.3d 984 (4th Cir. 1993) (Table).

The approved plan of reorganization required that the Antonellis transfer substantially all of their property interests to the Liquidating Trust for liquidation "as rapidly as market conditions allow." By using a trust, the Antonellis and the creditors hoped to avoid the expense and delay of having the bankruptcy court separately approve each of more than 150 property sales. The trust agreement explicitly limited the function of the Liquidating Trust to"activities . . . reasonably necessary to, and consistent with accomplishment of, [trust] purposes," which were:

> liquidating the [trust property] as rapidly as market conditions allow, consistent with the objective of maximizing value and taking into consideration tax effects and business impediments, distributing the proceeds therefrom in accordance with the terms of this Agreement and the Plan, accelerating the process of conveying identified properties to Project Creditors . . . and engaging in any and all other activities of the Trust which shall be incidental thereto. Proceeds from the liquidation of [trust property] shall be distributed by the Plan Committee in accordance with the terms of this Agreement.

While the plan thus created the Liquidating Trust to take title to property of the bankruptcy estate, to sell it, and to distribute the proceeds, the bankruptcy court retained jurisdiction over implementation of the plan.

Relying on 11 U.S.C. § 1146(c) (exempting plan transfers from state "stamp tax or similar tax"), paragraph 9.5 of the plan exempted from state taxes transfers of property both from the Antonellis to the Liquidating Trust and from the Liquidating Trust to third-party purchasers. The paragraph provided:

> In accordance with Section 1146(c) of the Bankruptcy Code, neither the Bankruptcy Estate, the Debtors, the holders of Claims, the Custodian, the Liquidating Trust nor any third-party purchaser of assets of the Liquidating Trust shall be

4

liable for any stamp tax or similar tax on the issuance, transfer or exchange of a security or any item of property, or the making or delivering of an instrument of transfer under the Plan, by or to the Bankruptcy Estate or the Debtors or by or to the Custodian or the Liquidating Trust.

The State of Maryland, Montgomery County, and Baltimore County were served with copies of the plan and related papers because all three entities were creditors of the estate for unpaid income and property taxes. Also, the State of Maryland and Montgomery County received additional copies of the plan in connection with an adversary action filed by the creditors' committee against them, as well as other states and municipalities, to declare that transfers from the Liquidating Trust to third-party purchasers would indeed be tax exempt. That action, however, was dismissed on motion of the State of Maryland and Montgomery County who alleged that the controversy was not ripe. The bankruptcy court observed that the proposed third-party transfers were not sufficiently "imminent" because, among other things, "the Plan must still be confirmed." In re Antonelli, 1992 WL 435879 at *3 (Bankr. D. Md. 1992).

One week after dismissing the adversary proceeding, the bankruptcy court held a confirmation hearing. None of the Taxing Authorities appeared at the hearing on confirmation of the proposed plan, and, after the court approved the plan by order dated November 13, 1992, none appealed to the district court.

In accordance with the plan, the Antonellis transferred their property to the Liquidating Trust, which began selling the property of the bankruptcy estate. In November 1993, it sold a residence in Montgomery County known as "Camberwell Down"; in June 1994 it sold a parcel of land adjacent to the Richie Pike Shopping Center in Montgomery County; and in July 1994 it sold the "Belmont Property" in Baltimore County. Deeds for these properties reflected the transfers from the Antonellis to the Liquidating Trust and from the Liquidating Trust to the third-party purchasers. All of these deeds claimed exemption from recordation, transfer, and stamp taxes. At the time of recordation, none of the Taxing Authorities sought to impose a transfer or recordation tax.

5

Almost a year later, however, in May 1995, the Taxing Authorities filed this action against the Liquidating Trust as well as the three purchasers of the properties located in Montgomery County and Baltimore County, seeking to recover more than $95,000 in state and county transfer and recordation taxes. The Taxing Authorities also sought to recover similar taxes in an unspecified amount in respect to other unspecified transfers. The defendants removed the case to the district court, and following cross-motions for summary judgment, the district court entered judgment in favor of the defendants.

With respect to the State of Maryland and Montgomery County, the district court ruled that they had sufficient notice of the plan's provisions and failed to take action to challenge them at the time, thereby precluding them from collaterally attacking the bankruptcy court's order confirming the plan. The district court relied in large part on the fact that the State of Maryland and Montgomery County had been named defendants in the declaratory judgment proceeding that raised the tax issue. Because Baltimore County was not named in that adversary action, the district court concluded that notice to it was more questionable. Accordingly, the court decided to rule on the merits, holding that "both the literal terms of [11 U.S.C.] § 1146(c) and the interests of the public in sound and efficient administration of bankruptcy estates support the application of § 1146(c) to transfers made by the Liquidating Trust." 191 B.R. at 646. This appeal followed.

II

The Taxing Authorities contend that they are not bound by the bankruptcy court's order confirming the plan of reorganization because "[t]he basic notion of finality underlying res judicata and preclusion [requires] that a person receive[ ] adequate due process notice." They claim that they did not receive sufficient notice to alert them to object to the plan because they were not yet creditors for transfer and recordation taxes. Those taxes would become due only when deeds memorializing transactions from the Liquidating Trust to the third-party purchasers were recorded, long after the plan was approved. Since the plan involved only future transfers, the Taxing Authorities claim they were not in a position to act.

As an initial matter, we note that to the extent the order confirming the Plan incorporates 11 U.S.C. § 1146(c) and goes no further, the

6

Taxing Authorities are bound not by "res judicata and preclusion" but by the statutory provision itself. That Bankruptcy Code provision, which exempts plan transfers from every state "stamp tax or similar tax," is a congressional enactment that binds the state and its counties whether they have notice or not. They are so bound neither solely nor primarily because the bankruptcy court entered an order incorporating the tax exemption provision, but because the federal government has power under the Bankruptcy Clause of the Constitution, art. I, § 8, cl. 4, to enact such a provision, and any bankruptcy provision enacted within constitutional authority applies directly to a bankruptcy estate and takes precedence over conflicting state provisions by reason of the Supremacy Clause, U.S. Const. art. VI, § 2. The provision for tax exemption at issue here operates against the states in a fashion similar to, for example, the automatic stay provision, 11 U.S.C. § 362. The force of such legislative enactments is not derived from a court order or prior adjudication, but from the legislative enactments themselves. Thus, to the extent that the bankruptcy court's order reflects an accurate interpretation of 11 U.S.C. § 1146(c), the order is mere surplusage and imposed no new burden on the Taxing Authorities.

III

While the Taxing Authorities may be ready to acknowledge the precedence of federal bankruptcy law over state taxing provisions, they argue that the bankruptcy court in its confirmation order interpreted 11 U.S.C. § 1146(c) too expansively, applying it to circumstances not covered by the Bankruptcy Code's exempting provision.

The bankruptcy court's interpretation of 11 U.S.C.§ 1146 is manifested by its approval of paragraph 9.5 of the liquidation plan providing that "neither the Bankruptcy Estate . . . the Liquidating Trust nor any third-party purchaser of assets of the Liquidating Trust shall be liable for any stamp tax or similar tax on the . . . transfer . . . of property, or the making or delivery of an instrument of transfer under the Plan, . . . by or to . . . the Liquidating Trust." The bankruptcy court thus applied § 1146(c)'s exemption to the real property transfers that were, under the plan, to occur first from the debtors to the Liquidating Trust and then from the Liquidating Trust to third-party purchasers. The Taxing Authorities acknowledge that the first level of transfers is exempted from taxation by 11 U.S.C. § 1146(c); they argue, how-

7

ever, that the second level is not. They contend that their position is supported by our decision in Mensh v. Eastern Stainless Corp. (In re Eastmet Corp.), 907 F.2d 1487 (4th Cir. 1990) (holding that § 1146(c) exemption does not apply to the recordation of mortgages taken out by third-party purchasers to purchase property from a bankruptcy estate).

The Taxing Authorities' arguments fail to recognize the larger structure of the plan of reorganization, which specifically required both levels of transfer to take place in order to liquidate the debtor's assets and distribute the proceeds to the creditors. The interposition of the Liquidating Trust between the debtors and the ultimate purchasers was simply a procedural mechanism to facilitate the plan's overall purpose of orderly and efficient liquidation. The trust was created solely to mediate the transfers that were essential to the plan.

Regardless of our opinion as to the possible merits of the arguments now raised by the Taxing Authorities, however, we conclude that they are procedurally barred from now making them. They had the knowledge, choice, and opportunity to object to the bankruptcy court's order or to appeal it to the district court, and they pursued neither course. It is noteworthy that when the State of Maryland and Montgomery County were sued in the declaratory judgment action raising this very issue, only these two entities among all of those named as defendants chose not to obtain a court ruling on the issue. Rather, they moved to dismiss the action because no plan had yet been approved. But when the plan was approved, they elected neither to object nor to appeal. While they certainly were not required to challenge the plan, they cannot later seek to challenge it collaterally. As we stated recently in Spartan Mills v. Bank of America Illinois, 112 F.3d 1251 (4th Cir. 1997):

> The judicial system's need for order and finality requires that orders of [bankruptcy] courts having jurisdiction to enter them be obeyed until reversed, even if proper grounds exist to challenge them. A challenge for error may be directed to the ordering court or a higher court, as rules provide, but it may not be made collaterally unless it is based on the original court's lack of jurisdiction.

8

Id. at 1255; see also Celotex Corp. v. Edwards, 115 S. Ct. 1493, 1498 (1995); 11 U.S.C. § 1141(a) ("[T]he provisions of a confirmed plan bind the debtor . . . and any creditor" whether or not the creditor accepted the plan or is adversely affected by it).*

The Taxing Authorities argue that notice of the plan was given to them as creditors for unrelated taxes and was not effective against them as potential creditors for transfer and recordation taxes. While the Taxing Authorities may not have received notice specifically because they were potential creditors in respect to transfer and recordation taxes, since none were yet due, they nevertheless had actual notice of the plan's provision exempting such transfers. The binding effect of bankruptcy orders does not depend on whether the creditors receive notice because of a particular proof of claim they filed, but on whether they receive notice "reasonably calculated under all the circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank and Trust, 339 U.S. 306, 314 (1950); see also 11 U.S.C. § 1141(a) ("The provisions of a confirmed plan bind . . . any creditor" (emphasis added)). Thus, for purposes of enforcing bankruptcy orders, we inquire not into the reason for which the Taxing Authorities received notice but whether the notice received was "of such nature as reasonably to convey the required information." Mullane, 339 U.S. at 314; see also Piedmont Trust Bank v. Linkous (In re Linkous), 990 F.2d 160, 162 (4th Cir. 1993) (refusing to accord finality to a bankruptcy court's order when the requisite notice was inadequate).

_____

*We recognize that in Holywell Corp. v. Smith , 503 U.S. 47, 58 (1992), the Supreme Court indicated that § 1141(a) could not bind a creditor with postconfirmation claims. In Holywell, as in this case, the government was seeking to collect taxes that accrued postconfirmation. Unlike this case, however, the plan in Holywell "said nothing about whether the trustee had to file income tax returns or pay any income tax due." Id. at 51. Since the confirmation plan in this case directly states that the Liquidating Trust will not be liable for stamp taxes, we do not see how the Taxing Authorities can circumvent the holding of Celotex that a bankruptcy court's final order cannot be collaterally attacked. See Celotex, 115 S. Ct. at 1501.

9

Each of the Taxing Authorities received a copy of the proposed reorganization plan, which included the now-contested paragraph 9.5. While the plan and related documents were concededly complex because of the size of the estate and the number of projects and creditors involved -- making it understandable that the Taxing Authorities might not want to sift through all of the information provided -- that fact does not make the information that was provided insufficient. On the contrary, the notice given provided explicitly that the transfers both from the debtors to the Liquidating Trust and from the trust to third-party purchasers would not be taxable. The Taxing Authorities also received a document entitled Second Amended Disclosure Statement which gave them a complete listing of the estate's properties and their location, alerting them to the fact that the confirmed plan would require transfers of properties in their jurisdictions. Finally, the State of Maryland and Montgomery County were directed to the specific import of the tax exemption provision since they were made parties to a declaratory judgment proceeding on that issue.

In short, the Taxing Authorities, including Baltimore County, had sufficient notice of both the plan and the order confirming it to put them on legal notice of the plan's tax exempt provisions. Having received that notice and failed to present any objection, they are now barred from collaterally attacking the bankruptcy court's order. See Celotex, 115 S. Ct. at 1501; Spartan Mills , 112 F.3d at 1257-58.

IV

While the Taxing Authorities cannot collaterally attack the substance of the bankruptcy court's order, even if it may have been in error, they can and do question whether the bankruptcy court had jurisdiction to approve the plan, and in particular to include paragraph 9.5 exempting certain transfers covered by the plan. They contend first that the bankruptcy court's order confirming the plan exceeded the scope of authority given by 11 U.S.C. § 1146(c), and second, that the Eleventh Amendment bars enforcement of the bankruptcy court's order against them. We address these arguments in order.

A

With regard to the scope of bankruptcy court authority under 11 U.S.C. § 1146(c), the Taxing Authorities correctly point out that fed-

10

eral tax exemptions in derogation of state taxing authority are to be narrowly construed, permitting exemption only where it is clear that Congress intended it to apply. See California State Bd. of Equalization v. Sierra Summit, Inc., 490 U.S. 844, 851-52 (1989). But because we are faced with the question of whether the Taxing Authorities are barred from collaterally attacking a bankruptcy court order, the issue before us is not whether the bankruptcy court misconstrued the scope of § 1146(c), but whether the bankruptcy court had jurisdiction to confirm a reorganization plan claiming an exemption from transfer and recordation taxes. See Celotex, 115 S. Ct. at 1498 (noting that the proper question is not correctness of order but jurisdiction to enter it).

Section 1146 is not a jurisdictional limitation on the bankruptcy court any more than is any substantive law. It does not define the court's power but at most directs how that power should be exercised. Moreover, the Supreme Court has made clear that the jurisdictional grant relevant here, 28 U.S.C. § 1334(b) (granting jurisdiction over any proceeding "related to" a case under Bankruptcy Code), extends broadly to any matter "related to" the bankruptcy. See id. at 1498-1500 (noting that bankruptcy court jurisdiction may be more broad in Chapter 11 cases than in Chapter 7 cases); see also Spartan Mills, 112 F.3d at 1255-56; 28 U.S.C. § 157(a) (allowing district courts to refer to bankruptcy courts any proceeding "related to" a case under the Bankruptcy Code). The statutorily defined tax effects of a bankruptcy plan are unquestionably "related to" the bankruptcy case in which that plan is filed.

At best, the Taxing Authorities' arguments about the scope of § 1146(c) relate to a potential exception from the binding force of a court order -- which the Supreme Court has apparently never found applicable -- where the order is "transparently invalid or ha[s] only a frivolous pretense to validity." See Walker v. City of Birmingham, 388 U.S. 307, 315 (1967); see also Celotex, 115 S. Ct. at 1501 (determining that bankruptcy court injunction was not frivolous); GTE Sylvania, Inc. v. Consumers Union, 445 U.S. 375, 386-87 (1980) (noting that orders were not challenged as having "only a frivolous pretense to validity"). But the bankruptcy court's interpretation of the scope of § 1146(c) in the case before us was not so"transparently invalid."

Section 1146(c) of the Bankruptcy Code reads:

11

> The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer <u>under a plan</u> confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax.

(Emphasis added). Thus, according to the statutory language, transfers of property from the Liquidating Trust to third-party purchasers are exempt from "a stamp tax or similar tax" if the transfers occur "under a plan."

There can be little doubt that the terms of the plan and the trust agreement in this case required transfers both from the debtors to the Liquidating Trust and from the Liquidating Trust to third-party purchasers. Section 7.1 of the plan provides that "all of the property shall be liquidated, sold, transferred and/or distributed in accordance with the terms of this Plan and the Trust Agreement." Indeed, the essence of the plan was to have the Liquidating Trust take title to the Antonellis' properties, sell the properties, and distribute the proceeds to creditors.

The Taxing Authorities press further, however, arguing essentially that the confirmation order lacks validity because such two-step transactions are not explicitly condoned by the Bankruptcy Code. They maintain that "nothing in [11 U.S.C.] § 1123 refers to subsequent transfers or sales by either an entity to which the debtor's property is transferred or by an interested party to whom the debtor's property is distributed in kind." While the Taxing Authorities concede that transfers from the debtors to the Liquidating Trust are covered by the tax exemption of 11 U.S.C. § 1146(c), they argue that transfers <u>from</u> the Liquidating Trust to third-party purchasers are not covered because the debtors were not parties to the transfers.

If such second-step transfers were expressly prohibited by the Bankruptcy Code, a contrary court order could perhaps raise questions about invalidity, but that is not the case here. Section 1123 of the Bankruptcy Code sets forth the required and permitted contents of a plan. It provides, in mandatory language, that:

> Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall . . . provide adequate means for the plan's

12

implementation, such as . . . transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan;

11 U.S.C. § 1123(a)(5)(B). And the same section provides in permissive language:

Subject to subsection (a) of this section, a plan may . . . provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests; . . . and . . . [may] include any other appropriate provision not inconsistent with the applicable provisions of this title.

11 U.S.C. § 1123(b)(4) & (6). Thus, pursuant to 11 U.S.C. § 1123(b)(4), a reorganization plan may provide for liquidation and distribution to creditors. If that permissible end is chosen, however, § 1123(a)(5) requires that adequate means for implementation be included. Means which are otherwise adequate may be included as long as they are "appropriate" and "not inconsistent" with applicable provisions of the Bankruptcy Code. See 11 U.S.C. § 1123(b)(6).

We have no doubt that the Liquidating Trust is an "adequate means" for liquidating substantially all of the Antonellis' property and distributing its proceeds to creditors. Its terms thoroughly describe how the trust is to effect liquidations and so limit its authority. Use of a liquidating trust is certainly not a patently invalid means. Moreover, there has been no suggestion that the use of a liquidating trust is inappropriate. To the contrary, it seems entirely appropriate to use a liquidating trust to sell and distribute an extremely large estate, such as the Antonellis', which would otherwise consume a large amount of judicial resources and dissipate much of the estate in legal costs. And finally, the Taxing Authorities have failed to point us to any provision of the Bankruptcy Code which is inconsistent with the use of a liquidating trust. They argue, rather, that based on our decision in In re Eastmet Corp., § 1123 cannot be construed to extend § 1146(c) tax exemptions to "non-debtor transactions." Eastmet, 907 F.2d at 1490 (quoting In re Amsterdam Ave. Dev. Assoc., 103 B.R. 454, 459-60 (Bankr. S.D.N.Y. 1989)). We believe that their argument misreads Eastmet.

13

In Eastmet, we held that the recording of a mortgage to secure a loan used to purchase property from a bankruptcy estate was not itself within the scope of 11 U.S.C. § 1146(c). We noted that "[t]he plan . . . did not require that financing of the transaction be accomplished through a purchase money deed of trust." Eastmet, 907 F.2d at 1489. On the contrary, we observed, "the emanation of 100% of the purchase price from the purchaser's bank accounts or from unsecured loans would have been entirely acceptable under the plan." Id. Thus, the way in which third-party purchasers financed their purchases was irrelevant to the plan and their use of deed-of-trust financing therefore was not "under a plan."

Unlike the deed of trust financing for third-party purchasers that was involved in Eastmet, the transfers from the Liquidating Trust to third-party purchasers were required by the plan of reorganization as well as by the specific terms of the trust agreement that regulated the conduct of the Liquidating Trust. In fact, the Liquidating Trust's transfers of properties were the core mechanism by which the plan proposed to liquidate the Antonellis' assets and distribute the proceeds to creditors. In one aspect of its function, the Liquidating Trust stood in the shoes of the Antonellis, holding title to their property, and in another aspect it acted on behalf of creditors by collecting and distributing the proceeds from the sale of that property. It was the sole function of the Liquidating Trust to mediate the relationship between debtor, third-party purchaser, and creditor. By contrast, in Eastmet, the mortgages obtained by third-party purchasers were not necessary to the reorganization effort. Third parties could have financed their purchases or used their own capital to make them, and neither alternative was addressed in the Eastmet plan. The deed of trust only mediated the relationship between third-party purchasers and their financiers, both strangers to the bankruptcy estate. For that reason, we expressed doubt about whether a reorganization plan could require the use of mortgages, although we had no occasion to decide that narrow question, much less the broader question of whether any non-debtor transaction occurs "under a plan." See id. at 1489; see also In re Amsterdam Ave. Dev. Assoc., 103 B.R. at 454 (Bankr. S.D.N.Y. 1989); In re Bel-Aire Investments, Inc., 142 B.R. 992 (Bankr. M.D. Fla. 1992) (mortgage between debtor's successor and bank not "under a plan"); In re Kerner Printing Co., Inc., 188 B.R. 121 (Bankr. S.D.N.Y. 1995) (sale by creditor acting as liquidating agent, who

14

could sell property or purchase other creditors' claims and retain the property, not "under a plan"). In the plan before us, however, the Liquidating Trust was not formed or authorized to carry on business independent of the plan's purposes. As a non-debtor entity, it was formed solely to effectuate the liquidation and distribution of the bankruptcy estate, and therefore it is entirely reasonable to conclude that transactions to and from that entity occur "under a plan" for purposes of 11 U.S.C. § 1146(c).

We conclude, accordingly, that the bankruptcy court's order, which was affirmed on two levels of appeal, was far from claiming merely a frivolous pretense to validity.

B

The Taxing Authorities contend for the first time on appeal that the Eleventh Amendment -- immunizing the states from private suits in federal court -- barred the bankruptcy court from exercising jurisdiction over them in the confirmation proceeding. They contend that they have not waived their Eleventh Amendment immunity. See Seminole Tribe of Florida v. Florida, 116 S. Ct. 1114, 1132 n.16 (1996). Because the bankruptcy court had no authority in its confirmation order to bind the states to the bankruptcy plan, they argue, they are entitled to attack collaterally the bankruptcy court's order confirming the plan.

At the outset we note that the State of Maryland may, for the first time on appeal, raise Eleventh Amendment immunity because that immunity has jurisdictional aspects. See Schlossberg v. Maryland, ___ F.3d ___, ___ (4th Cir. July 22, 1997) (No. 96-1895). But we doubt whether the counties can do so. It has long been the law that the Eleventh Amendment does not bar suits in federal court against political subdivisions of the state. See, e.g., Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977); Lincoln County v. Luning, 133 U.S. 529, 530 (1890); cf. Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 123 (1984) (allowing Eleventh Amendment immunity for state and county officials where relief "substantially concerns . . . an arm of the State," the state funded the county program almost entirely, and state cooperation was essential to the county program). But even should all three Taxing Authorities

15

be entitled to interpose an Eleventh Amendment defense, we conclude that it is not applicable here.

The Eleventh Amendment, which provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," U.S. Const. amend. XI, applies to limit Article III judicial power, denying to federal courts "authority to entertain a suit brought by private parties against a state without its consent." Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 464 (1945); see also Schlossberg, ___ F.3d at ___.

The confirmation order in this case was not entered in a suit "against one of the United States" filed by a private party. The state was not named a defendant, nor was it served with process mandating that it appear in a federal court. While it was served with notice of the proposed plan and its confirmation, it was free to enter federal court voluntarily or to refrain from doing so. This is to be distinguished from the case in which a debtor, a trustee or other private person files an adversary action against the state in the bankruptcy court, causing the bankruptcy court to issue process summonsing the state to appear. Such an adversary proceeding would be a suit "prosecuted against one of the United States" and adjudication of that suit would depend on the court's jurisdiction over the state, implicating the Eleventh Amendment's limitation on federal judicial power. See Schlossberg, ___ F.3d at ___.

While resolution of an adversary proceeding against a state depends on court jurisdiction over that state, the power of the bankruptcy court to enter an order confirming a plan, including a provision interpreting § 1146(c), derives not from jurisdiction over the state or other creditors, but rather from jurisdiction over debtors and their estates. See Spartan Mills, 112 F.3d at 1255 (application of Celotex principle barring collateral attack depends on "bankruptcy court . . . jurisdiction over [the debtor] and its assets"). Thus, neither the party status nor the immunity of state and local governments has any impact on the bankruptcy court's power to determine whether the terms of a reorganization plan comply with federal law.

16

It is true that if a state wishes to challenge a bankruptcy court order of which it receives notice, it will have to submit to federal jurisdiction. As the Supreme Court explained in <u>New York v. Irving Trust Co.</u>, 288 U.S. 329, 333 (1933):

> The federal government possesses supreme power in respect of bankruptcies. If a state desires to participate in the assets of a bankrupt, she must submit to appropriate requirements by the controlling power; otherwise, orderly and expeditious proceedings would be impossible and a fundamental purpose of the Bankruptcy [Code] would be frustrated.

The state, of course, well may choose not to appear in federal court. But that choice carries with it the consequence of foregoing any challenge to the federal court's actions. While forcing a state to make such a choice may not be ideal from the state's perspective, it does not amount to the exercise of federal judicial power to hale a state into federal court against its will and in violation of the Eleventh Amendment. Instead, it is the result of Congress' constitutionally authorized legislative power to make federal courts the exclusive venue for administering the bankruptcy law.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>

17