**In re A.H. ROBINS COMPANY, INCORPORATED, Debtor.**

**No. 85–1307–R.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

July 28, 2000.

---

James C. Roberts, James S. Crockett, Jr., James M. Nolan, Mays & Valentine, Richmond, VA, for the plaintiff.

Virginia W. Powell, Hunton & Williams, Richmond, VA, for Ohio defendants.

Elise Porter, Assistant Attorney General, Betty D. Montgomery, Attorney General of Ohio, Richard Farrin, Assistant Attorney General, Chief of Taxation, Columbus, OH.

Robert A. Dybing, Shuford, Rubin & Gibney, P.C., Richmond, VA, John J. Farmer, Jr., Attorney General of New Jersey, Margaret A. Holland, Deputy Attorney General, Trenton, NJ, for the State of New Jersey.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

A.H. Robins Company, Inc. ("Robins II") initiated this proceeding by filing a Motion to Interpret Plan (the "Motion"). The Motion does not articulate the provision of the Bankruptcy Code or the Bankruptcy Rules on which it is based, but, in substance, it asks for a determination whether Robins II is entitled to claim a net operating loss ("NOL" on its income tax returns for the States of Ohio and New Jersey the "States"). The States have moved to dismiss the Motion for lack of subject matter jurisdiction.

## STATEMENT OF FACTS

On August 21, 1985, A.H. Robins Company, Incorporated, ("Robins I") filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. § 1101, *et seq.* At the time, Robins I was facing several thousand product liability actions throughout the United States and expected even more to be filed. Almost three years later, on July 26, 1988, the Sixth Amended and Restated Plan of Reorganization (the "Plan") was confirmed. New Jersey and Ohio were creditors of Robins I and received notice of the Plan, of the right to object to its terms, and of the hearing at which the Court considered confirmation of the Plan which resulted in the Confirmation Order by which the Plan was confirmed and put into effect. Neither State voiced any objection to the Plan nor appealed the decision confirming it.

The Plan was the culmination of extensive negotiations involving Robins I, the official committees representing its creditors, the plaintiffs in the product liability actions and the equity security holders of Robins I, as well as prospective purchasers of Robins I. The purposes of the Plan were to provide funds by which Robins I could fund a trust, known as the "Claimants' Trust," to pay the product liability claimants, and to permit Robins I to be acquired by Robins II so that Robins II could continue to engage in business as the successor to all the business and assets of Robins I. *See* Plan at ¶ 1.79.

The Plan reflects that Robins II was formed for the express purpose of effectuating the acquisition of Robins I by American Home Products Corporation ("AHP"). In that respect, the formation of a merger subsidiary, *i.e.*, Robins II, was essential to limit the liability of AHP; and, without that limitation of liability, the reorganization of Robins I would have been impossible and there would have been no funding for the Claimants' Trust. The merger qualified as a tax-free reorganization under Section 368(a)(1)(G) and Section 368(a)(2)(B) of the Internal Revenue Code. The merger was consummated on December 15, 1989 with the payment by AHP of $2.475 billion.

The Confirmation Order which approved the Plan and consummated the reorganization provides, *inter alia,* that:

The *transfers of property by Robins to the Successor Corporation* (i) are or will be legal, valid and effective transfers of property; (ii) vest or will *vest the Successor Corporation with good title* to such property free and clear of all liens, charges, claims, encumbrances, or interests, except as expressly provided in the Plan; (iii) do not and will not constitute fraudulent transfers or conveyances under the Code or under the laws of the United States, any State, territory, possession or the District of Columbia; and (iv) do not and will *not subject the Successor Corporation* or its Affiliates *to any liability by reason of such transfer under the laws* of the United States, *any State,* territory or possession thereof, or

the District of Columbia based, *in whole or in part, directly or indirectly, on any theory of law,* including, without limitation, any theory of successor or transferee liability.

Confirm. Ord. at ¶ 13 (emphasis added).

Quite clearly, Robins II succeeded to, and was entitled to the benefits of, the property of the estate of Robins I. *See* Plan at ¶¶ 1.79; 6.03. Among the property of the estate of Robins I to which Robins II succeeded was the net operating loss ("NOL") of Robins I and such rights to use and benefit from the NOL as Robins I would have had. The NOL (in the amount of $1,732,718,240) was attributable principally to the funding of the Claimants' Trust.

The amount of NOL claimed by Robins II on its federal tax return for the taxable year ended December 1989 was $1,732,-718,240.[1] After the confirmation of the Plan, Robins II and certain of its affiliates timely filed corporate income tax and franchise tax returns with the State of Ohio and the State of New Jersey. In both instances, the tax returns were audited, with each State disallowing some or all of the NOL deduction and thereupon issuing tax assessments against Robins II. Thereafter, Robins II paid the assessments, which totaled $19,800,000, and applied for income and franchise tax refunds in that amount.

Subsequently, the New Jersey Director of Taxation determined that Robins II was not entitled to use the NOL of Robins I because Robins II was not the actual corporation that sustained the losses reflected in the NOL, and the Director thereupon denied the request for refund which had been filed with the State of New Jersey by Robins II. That decision is on appeal to the Tax Court of the State of New Jersey.

In like fashion, the Ohio Tax Commissioner denied the claim of Robins II for a refund, concluding that Robins II was not entitled to the NOL of Robins I because Robins I was not a taxpayer during the relevant taxable year. The decision of the Ohio Tax Commissioner is on appeal in the State court.

Confronted with what it perceived as the abridgement of the fundamental principles by which Robins II had paid $2.475 billion to permit the funding of the Claimants Trust and an affront to the order of this Court approving the Plan, Robins filed a declaratory judgment action in this Court. Robins II sought "an order in furtherance of the confirmed Plan declaring that Robins II is entitled to the full use and benefit of the NOL of Robins I and granting such other and further relief as the Court deems just and proper." Compl. at 6.

The declaratory judgment action was dismissed for lack of subject matter jurisdiction because the Eleventh Amendment and relevant decisional law interpreting it in our circuit (foreclosed suits in which officials of the States are named as defendants in their official capacities) and are served with process summonsing them into federal court in their official capacities. *See A.H. Robins Co., Inc. v. Dieleuterio (In re A.H. Robins Co., Inc.),* 235 B.R. 406 (Bankr.E.D.Va.1999). In the Memorandum Opinion, the Court observed that:

> [i]f it is otherwise permissible under the provisions of the Bankruptcy Code, this court has *retained jurisdiction* over the bankruptcy proceedings and can consider any proper motion brought before it in which the officials of a State are not served with process or compelled to appear and submit to the jurisdiction of the federal court.

235 B.R. at 413, n. 3 (emphasis added). Apparently relying on that language, Robins II filed this Motion, in which it asks for essentially the same relief requested in the Complaint for Declaratory Relief. In support of its argument that this Court has

---

1. The record does not reflect the extent to which, if any, the NOL was allowed under federal tax law.

jurisdiction to entertain the Motion and interpret the Plan, Robins II cites this Court's language in *In re A.H. Robins Co., Inc.*, 182 B.R. 128, 133 (Bankr.E.D.Va. 1995), to the effect that "where there exists a matter involving the interpretation or implementation of the Plan ... this Court is fully and exclusively empowered to address that matter in the first instance." In response, the States argue for dismissal on the ground that the Eleventh Amendment precluded this Court's jurisdiction.[2]

## DISCUSSION

In four decisions issued after the Supreme Court decided *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the United States Court of Appeals for the Fourth Circuit has outlined the limits of a bankruptcy court's jurisdiction to hear proceedings and enter orders against States. *See NVR Homes, Inc. v. Clerks of the Circuit Courts (In re NVR)*, 189 F.3d 442 (4th Cir.1999); *In re Herbert M. Collins*, 173 F.3d 924 (4th Cir.1999); *Maryland v. Antonelli Creditors' Liquidating Trust*, 123 F.3d 777 (4th Cir.1997); *Schlossberg v. Maryland*, 119 F.3d 1140 (4th Cir.1997).

In *Schlossberg*, the Court of Appeals held that adversary proceedings filed by the debtor or the trustee are suits against the States because the State or its representative was named a party, and, therefore, the federal court had issued compulsory process which had summoned the State to appear before it. *See Schlossberg*, 119 F.3d at 1148.[3] In *Antonelli*, the Fourth Circuit precluded claims of certain taxing authorities because they: (1) had knowledge of the plan which exempted the

debtors' estate from certain taxes; (2) had the choice and opportunity (a) to object to the plan and the Bankruptcy Court's Confirmation Order, or (b) to appeal it to the district court; and (3) pursued neither course. *See Antonelli*, 123 F.3d at 782. However, the Court explained that, unlike in *Schlossberg*, the proceeding in *Antonelli* was not an adversary proceeding. Rather, in *Antonelli*, the proceeding arose out of a confirmation order entered by the Bankruptcy Court in a bankruptcy proceeding. The Court of Appeals went on to explain:

> The Confirmation Order in this case was not entered in the suit "against one of the United States" filed by a private party. The state was not named a defendant, nor was it served with process mandating that it appear in federal court. While it was served with notice of the proposed plan and its confirmation, it was free to enter federal court voluntarily or to refrain from doing so. This is to be distinguished from the case in which a debtor, a trustee or other private person files an adversary action against the state in the bankruptcy court, causing the bankruptcy court to issue process summonsing the state to appear.

*Antonelli*, 123 F.3d at 786–87 (citing *Schlossberg*, 119 F.3d at 1148).

In two decisions in 1999 that are not entirely harmonious, the Court of Appeals undertook to explain the distinction between *Schlossberg* and *Antonelli*. First, in *In re Herbert M. Collins*, the Court of Appeals reviewed a circumstance in which a debtor had been released in bankruptcy from all dischargeable debts and the Commonwealth of Virginia thereafter sought to

---

**2.** The States also argue for dismissal on the grounds that the Motion is barred by the Tax Injunction Act of 28 U.S.C. § 1341 and that it is procedurally improper. In the alternative, the States assert that should this Court find that it has jurisdiction, it should nevertheless abstain from ruling on Robins II's Motion.

**3.** In *Schlossberg*, the Court of Appeals also held that:

> Because the holding in *Seminole* extended to restrict all federal jurisdiction over the states based on Article I Powers, we hold in this case that Congress has no authority under the Bankruptcy Clause U.S. Const. art. I, § 8, Cl. 4 to abrogate state sovereign immunity in federal courts.

*Id.* at 1145, 116 S.Ct. 1114.

collect on pre-bankruptcy judgments on forfeited bail bonds. After giving notice to Virginia, the debtor moved to reopen the bankruptcy case for a determination that the pre-bankruptcy judgment debt on the forfeited bail bonds was dischargeable. The Fourth Circuit concluded that *Antonelli*, rather than *Schlossberg*, was controlling because the motion to reopen the bankruptcy was not a suit against Virginia; just as the plan confirmation proceeding in *Antonelli* was not a suit against Maryland. *See In re Herbert M. Collins*, 173 F.3d 924 (4th Cir.1999). In so doing, the Court explained that "[a]n adversary proceeding, with its compulsory process, is not required to reopen the case because the bankruptcy courts' power to reopen flows from its jurisdiction over debtors and their estates.... A motion to reopen may be filed by 'the debtor or other party in interest.'" *Id.* at 929 (relying on *Antonelli*, 123 F.3d at 787).

Thereafter, the Court of Appeals decided *In re NVR, L.P.*, 189 F.3d 442 (4th Cir.1999). NVR, a leading homebuilder, sought protection under Chapter 11 of the Bankruptcy Code and was allowed to continue its business operations while it pursued development and confirmation of a reorganization plan. NVR emerged from bankruptcy approximately 18 months after its petition was filed and during this period NVR made 5,571 transfers of real property and paid $8,349,103 in transfer and recordation taxes to state and local taxing authorities. Approximately $7 million of that total was paid to taxing authorities in Pennsylvania and Maryland. The bankruptcy plan provided that any transfer of NVR's property "in furtherance of, or in connection with the Plan shall not be subject to any stamp tax, real estate transfer tax, recordation tax, or similar tax," thereby invoking exemptions permitted to NVR under 11 U.S.C. § 1146(c). *In re NVR*, 189 F.3d at 448.

After NVR emerged from bankruptcy, it sought to secure refunds of the recordation and transfer taxes that it had paid while it was in bankruptcy. The various taxing jurisdictions in Delaware, New York, North Carolina and Virginia refunded the taxes without protest. However, Maryland, Pennsylvania and the taxing authorities in those States refused to remit the requested refunds.

"To obtain an interpretation of whether the tax payments were exempted under the Bankruptcy Code and the Plan, NVR initiated a Rule 9014 motion under the Federal Rules of Bankruptcy Procedure." *In re NVR*, 189 F.3d at 448. Both the bankruptcy court and the district court, on appeal, concluded that the plan, pursuant to 11 U.S.C. § 1146(c), exempted NVR from paying transfer and recordation taxes during the bankruptcy period. *See* 189 F.3d at 448. The bankruptcy court held that the State taxing authorities were not bound by the determination because of their Eleventh Amendment immunity to suits in federal court. The district court reversed that decision, concluding that the Eleventh Amendment did not afford immunity to the State taxing authorities because the motion filed under Bankruptcy Rule 9014 was not a "suit" under the Eleventh Amendment.

The Fourth Circuit sustained the plea of sovereign immunity under the Eleventh Amendment. In so doing, the Court summarized the decisions in *Schlossberg*, *Antonelli* and *Collins*, and then framed the issue as "whether the case before us [NVR] is a suit against the state taxing authorities or merely a proceeding to clarify a Chapter 11 plan of reorganization." *In re NVR*, 189 F.3d at 451–52. The Court concluded that the issue was to be resolved by evaluating the "procedure and substance of NVR's Rule 9014 motion." *Id.* at 452. Giving definition to those two analytical tools, the Fourth Circuit explained that:

As to the case's procedural posture, two issues are important: first, the degree of coercion exercised by the federal court in compelling the state to attend, see *Antonelli*, 123 F.3d at 786–87; and sec-

ond, whether the resolution, or the remedy, would require our jurisdiction over the state, *see id.* The substantive consideration focuses upon whether the action was, as stated by Chief Justice Marshall, "the prosecution of some demand in a Court of justice," as opposed to the orderly disposition of an estate, with the states' role limited to that of any other creditor.

189 F.3d at 452 (citing *Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 407–08, 5 L.Ed. 257 (1821); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945)).

█ Before undertaking the analytical analysis required by *NVR*, it is appropriate to note that a bankruptcy court clearly is permitted to exercise jurisdiction over the restructuring of debtor-creditor relations and the disposition of the debtors' estate. *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("the restructuring of debtor-creditor relations ... is at the core of the federal bankruptcy power"); *Antonelli*, 123 F.3d at 787 (holding that a bankruptcy court's power to entertain a plan Confirmation Order derives not from jurisdiction over the state or other creditors, "but rather from jurisdiction over debtors and their estates"); *In re Collins*, 173 F.3d at 930 (holding that a bankruptcy court's order that a debt owed to a state is discharged is not a suit against a state). In perspective of these fundamental principles and the controlling decision in *NVR*, it is necessary to examine closely the nature of the proceeding and the relief sought therein. To that task, we now turn.

## A. Procedural Considerations

The procedural evaluation makes it necessary first to identify the procedural provision used to bring the matter before the federal court and then to ascertain the degree of coercion exercised by the federal court in compelling the States to attend federal court in response to that procedural provision. Then, the question becomes whether the resolution of the proceeding, or the remedy imposed by the federal court, would require the exercise of jurisdiction over the States.

### 1. The Procedural Provision

█ Robins II has not identified in its papers the procedural provision on which its Motion is based. However, it appears that, as in *NVR*, Robins II is relying upon the procedural provision contained in Bankruptcy Rule 9014 because "there are (at least) two parties who are opposing each other with respect to relief sought by one of them." *In re NVR*, 189 F.3d at 452 (citing 10 Collier's on Bankruptcy ¶ 9014.01 (Lawrence P. King ed. 15th ed.1999)). As in *NVR*, the Motion filed here by Robins II sets its interest at odds with those of the States. And, unlike an adversary proceeding under subpart VII of the Bankruptcy Rules, a contested matter initiated under Rule 9014 is commenced by filing a motion which is served on the other parties to the proceeding. A summons is not issued and hence there is no compulsion for the States to attend. Indeed, as in *Antonelli* and *In re Collins*, the States are "free to enter federal court voluntarily or to refrain from doing so." Accordingly, as in *NVR*, the motion filed here by Robins II cannot be characterized as coercive under the first of *NVR*'s procedural factors.

### 2. The Extent to Which the Resolution of the Proceeding, or the Remedy Imposed by the Federal Court, Would Require the Exercise of Federal Jurisdiction Over the States

█ In *NVR*, the Court of Appeals observed that "[t]he states persuasively framed this issue by noting that, if the federal court action could not result in ordering the states to return the tax payments, then the opinion issued would be advisory and improper." *In re NVR*, 189 F.3d at 453 (citation omitted). The Court

of Appeals went on to explain, in *NVR*, "that absent the ability of the bankruptcy court to exercise jurisdiction over the states and to compel the turnover of the tax payments, no remedy effectively could be granted," and thereupon concluded that "[t]his case is indeed one in which 'adjudication ... depend[s] on the court's jurisdiction over the state.'" (citing *Antonelli*, 123 F.3d at 787). Thereupon, the Court concluded that: "[t]his finding alone is enough to determine that the action, if it is to meet the requirements of Article III, is a suit against the states." *In re NVR*, 189 F.3d at 453.[4]

Here, the resolution of the Motion can be accomplished in one of two ways. First, the Court could issue an order requiring the States to disgorge the franchise and income taxes withheld from Robins II. Without question, an order of that sort would require the exercise of federal jurisdiction over the States, and, therefore, clearly would fall within the prescriptions of the Eleventh Amendment as interpreted in *NVR*.

Second, an order could be issued which interpreted the Plan but did not require the States to disgorge funds, or, for that matter, take any affirmative action whatsoever. However, the Fourth Circuit explained in *NVR* that, if a decision on the motion secured no satisfaction for the mov-

ant, it would be merely advisory and hence of no effect. *See In re NVR*, 189 F.3d at 454; *Hewitt v. Helms*, 482 U.S. 755, 761, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) ("The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is the settling of some dispute which affects the behavior of the defendant towards the plaintiff."). And, of course, if the only utility of an order of this sort were to provide a predicate for an assertion of it as *res judicata* in a later state court or administrative proceeding pitting Robins II against the States of Ohio and/or New Jersey, an order resolving the Motion "would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment." *In re NVR*, 189 F.3d at 454 n. 5 (citing *Green v. Mansour*, 474 U.S. 64, 73, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)); *see also Manning v. South Carolina Dep't of Highway and Pub. Transp.*, 914 F.2d 44, 48 (4th Cir.1990) (holding suit for declaratory judgment prohibited under Eleventh Amendment because ruling would be used as *res judicata* and have the same effect as damages).[5]

In sum, to enter a non-advisory opinion resolving the Motion, the Court, under

---

**4.** It is difficult to see how a motion under Bankruptcy Rule 9014 is any different, in substantial effect, than the motion which animated the proceedings in *In re Collins*. It appears, however, that the procedural device in *In re Collins* was both *sui generis* and of doubtful provenance because the proceeding there seems to have been instituted by a single pleading which presented both a motion to reopen the bankruptcy case and a request to determine the dischargeability of the debt at issue. Under the Bankruptcy Rules, the latter relief (determination of dischargeability) is available only by way of an adversary proceeding whereas the former (motion to reopen) does not. Bankruptcy Rule 7001(b). There appears to have been no objection to this procedural anomaly in the Bankruptcy Court which, of course, also did not consider the Eleventh Amendment issue because it was

raised for the first time on appeal. As a result, in *In re Collins*, the Fourth Circuit permitted, over an Eleventh Amendment challenge, use of a procedural device, one aspect of which would be classified, under *Schlossberg*, as a compulsory and hence would be foreclosed under the Eleventh Amendment. It is therefore possible that *In re Collins* is a factual anomaly, but that issue is not one for resolution by this Court because it is bound by the decision in *NVR*.

**5.** The res judicata effect of an order resolving the Motion at issue here is, of course, quite different than the res judicata effect of the Confirmation Order approving the Plan which was issued in a matter over which this Court clearly had subject matter jurisdiction and which is now beyond challenge by the States. (*See infra*, pp. 320–321).

*NVR*, would be required to exercise jurisdiction over the States.

## B. The Substantive Analysis

■ In *NVR*, the Court of Appeals explained that the substantive analysis must focus on "whether the action was … 'the prosecution of some demand in a Court of justice' as opposed to the orderly disposition of an estate with the states' role limited to that of any other creditor.'" *In re NVR*, 189 F.3d at 452. Making that analysis in *NVR*, the Fourth Circuit characterized NVR's motion under Rule 9014 as "demanding payment from the Maryland and Pennsylvania treasuries." *Id.* Then, the Court of Appeals held that:

> The Rule 9014 motion initiated a "contested matter" pitting Maryland and Pennsylvania against NVR, a citizen of their own state or of another state. The "suit" clearly sought a determination that the states owed NVR money—repayment of exempt transfer and recordation taxes—and a favorable decision would require that a federal court raid Maryland's and Pennsylvania's treasuries. Because NVR "commenced or prosecuted" a suit against the states, sovereign immunity applies, and the suit is barred as to the states.

*Id.* The States assert that *NVR* is dispositive of the substantive analysis to be made in resolving the Motion. Robins II seeks to distinguish *NVR* by arguing that "[t]he relief requested in the Motion involves the protection of property rights transferred to Robins II under the Plan, not the compulsion of a money payment in an independent action against a State." Robins II goes on to explain that its "Motion is a necessary and appropriate response to a belated, post-confirmation attempt by the States to undo a critical provision of one of the most unique and effective plans of reorganization ever fashioned." Robins II also contends that, if the Confirmation Order, which binds the States, is to have any meaning, the Court must disregard the States' procedural ploys and issue the substantive interpretation requested in the Motion, which is seen by Robins II as merely a declaration of property rights under the Plan and the Confirmation Order.

Essential to the substantive analysis required by *NVR* and hence to the resolution of the States' motions to dismiss is that it is unnecessary for the Court further to declare property rights under the Plan or the Confirmation Order because the Court, in issuing the Plan and the Confirmation Order, already has done precisely that. Paragraph 13 of the Confirmation Order provides *inter alia* that:

> The transfers of property by Robins to the Successor Corporation [Robins II](i) are or will be legal, valid and effective transfers of property; (ii) vest or will vest Successor Corporation [Robins II] with good title to such title …. and (iv) do not and will not subject the Successor Corporation [Robins II] or its affiliates to any liability by reason of any such transfer under the laws of the United States, any State … based, in whole or in part, directly or indirectly, on any theory of law, including, without limitation, any theory of successor or transferee liability.

That the effect of the Plan and Confirmation Order was to transfer the NOL of Robins I to Robins II was explained in *A.H. Robins Co. v. Dieleuterio (In re A.H. Robins Co., Inc.)*, 235 B.R. 406, 408 (Bankr.E.D.Va.1999):

> Robins II succeeded to, and was entitled to the benefits of, the property of the estate of Robins I. Plan at ¶¶ 1.79; 6.03. Among the property of the estate of Robins I to which Robins II succeeded was the net operating loss ("NOL") of Robins I and such rights to use and benefit from the NOL as Robins I would have had.

Thus, as explained in *Dieleuterio*,[6] by virtue of powers, which it beyond question

---

**6.** Of course, *Dieleuterio* itself is final and be-  yond challenge.

had, the Court long ago determined that Robins II succeeded to, and was entitled to the benefits of, the property of the estate of Robins I which, of course, included the NOL. The States had notice of the Plan, the terms of the Confirmation Order and the date of the hearing at which the Confirmation Order was approved. The States chose not to object to the Plan or the Confirmation Order and they no longer have the ability even to challenge, much less to undo, the Confirmation Order, the Plan, or their effect on the transfer of the property of Robins I, including the NOL, to Robins II.

The practical and legal effect of granting the Motion filed by Robins II would be a ruling that, under the Supremacy Clause of the United States Constitution, the States' taxing authorities are precluded from applying state tax law precepts to alter the provisions and terms of the Plan or the Confirmation Order as to which the States had full notice but raised no objection. That argument, as far as it goes, is no doubt correct because the States, having had notice and opportunity to be heard in the bankruptcy proceeding and having eschewed that opportunity, cannot alter, challenge, or evade, either directly or indirectly, the legal effect of the determination made by this Court in approving the Plan and entering the Confirmation Order.

However, a decision on the effect of the Supremacy Clause on the outcome of the State tax proceedings first requires the interpretation and application of State tax laws. The meaning of the State tax laws must be determined by the State courts. Then, it will be necessary for those courts to assess whether their respective inter-pretations of State tax laws, as applied to the NOL, are in conflict with the property rights which Robins II obtained under the Plan and Confirmation Order. Those issues must be raised in the State courts, and they ultimately may be appealed to the Supreme Court of the United States. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Indeed, the Supremacy Clause argument advanced here by Robins II is inextricably inter-twined with the interpretation of the State tax laws at issue in the proceedings under way before the State courts. And, although neither the State taxing authorities nor the State courts are at liberty to alter, amend or permit evasion of the terms of the Confirmation Order or the Plan, it is those courts which, under the *Rooker/Feldman* doctrine, must make, in the first instance, the assessment whether the State tax laws have such an effect. And, the only federal court permitted to review the determinations made by the State courts is the Supreme Court of the United States.[7]

Considering that this Court already has determined the issue of who owns the NOL, in a proceeding as to which it had jurisdiction and as to which the States had notice and an opportunity to be heard (but elected not to participate), the only warrant for further visiting that matter would be to review the decision of the State taxing authorities to determine whether, in applying State tax law, the taxing authorities properly deferred to the now-incontestable results of the Confirmation Or-

---

7. In that regard, it is important to note that *NVR* decided the substantive analysis component of the Eleventh Amendment immunity issue before it by acknowledging that federal law reigned supreme in the area of bankruptcy, but that federal courts did not reign over federal treasuries. Obviously, the decision in *NVR* referred only to inferior federal courts and not to the Supreme Court because the Fourth Circuit dealt only with matters before the bankruptcy court, the district court and, of course, itself. Nothing in *NVR*, however, changes the jurisprudence of the Supreme Court of the United States (or the Fourth Circuit for that matter) with respect to the *Rooker/Feldman* doctrine and the jurisdiction of the Supreme Court of the United States to resolve federal constitutional questions, including those arising under the Supremacy Clause, in its review of State court decisions where the constitutional claims have been properly reserved and are intertwined with the State law questions decided by the State courts.

ders and the Plan. Accordingly, the only purpose of an order on those issues would be to advise on them or to compel the State treasury to disgorge the refunds which are the subject of the pending State actions. Under those circumstances, and considering the decision of the Fourth Circuit in *NVR*, the Court must conclude that the States enjoy Eleventh Amendment immunity from the proceedings instituted by the Motion filed here by Robins II.

## CONCLUSION

For the foregoing reasons, the motion is dismissed, without prejudice, for lack of subject matter jurisdiction.[8]

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

ROBERT E. PAYNE, District Judge.

I concur in the foregoing opinion.

---

**8.** Given this disposition, it is unnecessary to determine the other theories of dismissal or abstention advanced by the States.